348 So.2d 209 (1977)
Priscilla DOMINGUE, Plaintiff-Appellee,
v.
CONTINENTAL INSURANCE COMPANY et al., Defendants-Appellants.
No. 6060.
Court of Appeal of Louisiana, Third Circuit.
June 30, 1977.
Rehearing Denied August 1, 1977.
*210 Allen, Gooch & Bourgeois by Michael Harson, Lafayette, for defendants-appellants.
Plaisance & Franques by A. J. Plaisance, Lafayette, for plaintiff-appellee.
Before CULPEPPER, WATSON and STOKER, JJ.
WATSON, Judge.
Defendants, Joiscin B. Cormier, and Continental Insurance Company, his liability insurer, have appealed from a jury verdict awarding plaintiff, Priscilla Domingue, $30,000 in damages for an intervertebral disc injury received in an automobile accident. The driver of the automobile in which plaintiff was riding, Grace M. Pellerin, who was made third party defendant, was found free of negligence. Ms. Pellerin reconvened, but the jury concluded that she sustained no damages in the accident. The trial court denied new trial, additur and remittitur.
Defendants contend that the trial court erred in allowing the jury to consider the policy limits of Continental's policy. Also, it is contended that the jury erred in finding that Cormier was responsible for the accident, or, in the alternative, finding that he was solely responsible; and in finding that plaintiff's injuries justify an award of $30,000. Ms. Domingue has answered the appeal asking for an increase to $125,000, and Ms. Pellerin has answered asking for an award of $750.
The first issue is whether the trial court erred in allowing the jury to view Continental's insurance policy, which was introduced into evidence. The policy has limits of $100,000 for bodily injury in one occurrence. The jury was properly charged *211 that an insurance company is entitled to be treated fairly and impartially in the same manner as a private individual. The First Circuit held in Ashley v. Nissan Motor Corp. in U.S.A., 321 So.2d 868 (La.App. 1 Cir. 1975) writ refused La., 323 So.2d 478, that the trial court correctly refused to allow a jury to be informed of the policy limits of the five insurers involved. 321 So.2d 874. The Supreme Court in denying writs in Ashley stated:
"Although we do not approve that portion of the opinion which permitted the policy limits to be withheld from the trial jury, we cannot say that under the facts the result is incorrect." 323 So.2d 478
In view of this plain language by the Supreme Court and the fact that the ability of a defendant to respond in damages is well established as a proper subject for jury consideration, State Farm Fire & Casualty Company v. Drost, 330 So.2d 393 (La.App. 3 Cir. 1976), the trial judge did not err in allowing the jury to see Continental's policy.
The remaining issues are:
(1) whether the jury's verdict that Cormier's negligence was the sole cause of the accident is manifestly erroneous; and
(2) whether the awards of $30,000 to Ms. Domingue and zero to Ms. Pellerin are within the jury's much discretion under LSA-C.C. art. 1934.
I. Causation
The accident occurred at the intersection of two blacktopped roads in Lafayette Parish on October 3, 1975. Mr. Cormier was driving a tractor-backhoe south on Louisiana Highway 93, Garcia Road, and Ms. Pellerin was driving west on Louisiana Highway 342, Ridge Road. Mr. Cormier was getting ready to turn at the intersection and the scoop on the front of his backhoe was protruding into Ridge Road where it caught the Pellerin automobile on the right or passenger side. The backhoe was either at a dead stop or slightly rolling. Mr. Cormier was charged with failing to yield the right-of-way and pleaded guilty. The Pellerin automobile was a total loss. Acadian Ambulance took both Ms. Domingue and Ms. Pellerin away from the scene.
The two state troopers who investigated the accident said that the scoop was protruding into Ridge Road some four to six inches. Garcia Road is controlled by a stop sign. The blade of the backhoe was approximately three feet from the ground. Ridge Road was estimated as less than 20 feet wide.
Ms. Pellerin said there was a car coming from the other direction and a big shovel in the road in front of her. She was unable to stop or avoid the shovel, which she thought was still moving at the time of impact. Her speed was around 35 or 40 miles per hour. Her passenger, Priscilla Domingue, was unconscious and bleeding from the forehead after the accident.
Ms. Domingue had another accident December 8, 1975, which defendants claimed caused her injuries, but she testified she was not injured in the second accident except for a small nick in the neck from a piece of glass. It was stipulated that the truck which struck her car in the second accident was traveling between 50 and 60 miles per hour. Four other witnesses, Patrick Ritchey Garrett, Murray Joseph Fernell, Arthur J. Fisher and Lou (Mrs. Murphy) Cloteau, testified that Priscilla Domingue was not hurt in the second accident.
Mr. Cormier testified that he was coming to a stop when the accident occurred and thought he had been stopped about a minute at the time of impact. He saw the Pellerin automobile when it was 150 feet away. Cormier admitted saying in deposition that he was at fault in causing the accident but maintained at trial that Ms. Pellerin could have avoided him. Until the investigating officers measured with a tape, Mr. Cormier did not believe his scoop was protruding onto Ridge Road, but he admitted going past the stop sign in order to see the intersection.
Charles Dale Domingue, an employee of Cormier, witnessed the accident from a truck behind Mr. Cormier and testified that *212 the backhoe was at a complete stop. This witness and Clifton Chesson, also an employee and passenger in the truck, said that the car coming toward Ms. Pellerin passed the intersection before the collision.
The jury apparently accepted the testimony of Ms. Pellerin that she was unable to avoid hitting the backhoe because of the oncoming car in the opposite lane. Her perception of this vehicle was undoubtedly different from that of the witnesses who viewed it from the side. It is undisputed that Mr. Cormier had a duty to prevent the shovel of the backhoe from protruding into the right-of-way street. The two blacktopped roads in question are narrow and there is a reasonable evidentiary basis for the jury to conclude that the accident resulted from Mr. Cormier's partial obstruction of the intersection, clearly negligent on his part. Mr. Cormier was required to stop and yield the right-of-way without obstructing traffic on the favored highway. The jury's verdict that Cormier's negligence was the sole cause of the accident is not manifestly erroneous.
Damages
A. Grace M. Pellerin
Continental paid Ms. Pellerin $500 for property damage, $34 for wrecker service and $50 for inconvenience but did not receive a release from her. There is no evidence of any additional damages to Ms. Pellerin, and the jury correctly refused to award her further damages.
B. Priscilla M. Domingue
Ms. Domingue, age 24, said that the doctor at Charity Hospital suggested she see her own physician. She remained in bed in what she called "excruciating pain" until she went to Dr. Bourque a few days later. The base of her neck was hurting, her chest was sore and she had headaches. She returned to bed and remained on medication for a month and a half. She stopped taking the medication because she was unable to do so and work in her previous occupation as a waitress. She missed approximately a month of work as a result of the accident. At the time of trial, slightly over a year later, Ms. Domingue said she was still in pain with discomfort from the base of the neck to the elbow for which she took Tylenol and aspirin. She had returned to her previous occupation at the time of trial but said it aggravated her pain. Her chest pain subsided two or three weeks after the accident.
Ms. Domingue was seen by her family physician, Dr. Lawless Bourque, on October 7, four days after the accident, when she had a stiff neck and muscle spasms. Dr. Bourque saw her again on October 28, when she had a stiff neck and pain down the left arm. Dr. Bourque diagnosed a severe neck strain with some nerve root irritation on the left side. Dr. Bourque referred her back to Charity Hospital for additional x-rays which could be compared with her initial ones. Ms. Domingue had been given medication for pain and muscle spasms at Charity and was given another kind of muscle relaxant and some codine on her second visit to Dr. Bourque. Dr. Bourque thought the arm and shoulder pain indicated a serious condition. He testified that his patient was truthful and honest and not a malingerer.
Ms. Dominque was subsequently sent by her attorney to Dr. John J. McCutchen in Houston, Texas; he is a neurologist with impressive professional qualifications. He saw Priscilla Domingue on August 13, 1976, with a history of ". . . probable mild post-concussion syndrome, traumatic vestibulitis, improved, and Stage I cervical intervertebral disc injury at C4-5." (TR. 88) Dr. McCutchen's opinion was that her headaches would improve, `but the disc space narrowing revealed by her x-rays suggested ". . . a chronic intervertebral disc problem may result in the need for further medical treatment at sometime in the future." (TR. 88) He defined a Stage I cervical intervertebral disc injury as a damaged disc which might have the capacity to return to a normal disc and a Stage II degenerated or softened disc as one that will remain that way throughout a lifetime and which, with minor stress, is more likely *213 to swell, cause nerve root pressure and possibly rupture. He stated Ms. Domingue probably would be moved into the Stage II category, since the narrowing on her x-rays made it unlikely the disc would return to normal. There is a very high probability, according to the physician, that it will rupture and it might require disc removal and fusion to keep pressure off the nerve roots even if it did not rupture. He recommended that Ms. Domingue avoid heavy lifting or straining and limit herself to light duty activity. Dr. McCutchen said that the Stage I classification was a conservative estimation of Ms. Domingue's injury and he could have put it in Stage II. He indicated that, if her pain continued, she should have further testing in order that a recommendation could be made for or against surgical treatment.
Dr. J. Lee Leonards, who examined Ms. Domingue on behalf of the defendant insurer, is an orthopedic surgeon in Lafayette, Louisiana, and saw her on October 7, 1976, not long before trial. The x-rays taken by Dr. Leonards show an abnormality at the C3-4[1] level which he described as ". . . an anterior flexion type of injury . . ." with ". . . a residual osteophyte. . ." (TR. 148). He thought that the injury was a stable one.
The jury apparently accepted Dr. McCutchen's testimony and considered it in connection with Ms. Domingue's testimony that she was still in pain at the time of trial, over a year after the accident.
There is no abuse of the jury's discretion in the award of damages to Ms. Domingue. Compare Schexnayder v. Carpenter, 338 So.2d 344 (La.App. 3 Cir. 1976), writ issued La., 340 So.2d 993, amended 346 So.2d 196 (La., 1977); and Fox v. State Farm Mutual Automobile Insurance Co., 288 So.2d 42 (La., 1974).
For the foregoing reasons, the judgment of the trial court herein is affirmed. All costs of this appeal are assessed to defendants-appellants, Continental Insurance Company and Joiscin B. Cormier.
AFFIRMED.
STOKER, J., concurs and assigns written reasons.
CULPEPPER, J., dissents from the holding that the jury can view the policy briefs and assigns written reasons, but concurs in the result.
CULPEPPER, Judge, dissenting in part.
I dissent from that part of the majority opinion which holds the policy limits of insurance coverage may be presented to the jury. Insofar as I can determine, this holding is contrary not only to the jurisprudence of Louisiana, but also to the rule in every other court in the United States, including the Federal Courts.
In the recent case of Ashley v. Nissan Motor Corp. in U.S.A., 321 So.2d 868 (La. App. 1st Cir. 1975), the majority held that in a personal injury case a jury should not be informed of the policy limits of insurance liability coverage. The rationale of the court's ruling is that although evidence is admissible to prove defendant's inability to pay damages, it is not admissible to show defendant's affluence or wealth. The court cites Hartman v. Aschaffenburg, 12 So.2d 282 (La.App. 4th Cir. 1943) and Winzer v. Lewis, 251 So.2d 650 (La.App. 2d Cir. 1971).
The majority opinion in the present matter cites no Louisiana case, nor have I found one, which holds contrary to Ashley. Instead, the author of the opinion in the present matter relies on the denial of the application for writs in Ashley, 323 So.2d 478, in which our Supreme Court stated:
"Writ denied. Although we do not approve that portion of the opinion which permitted the policy limits to be withheld from the trial jury, we cannot say that under the facts the result is incorrect."
Our Supreme Court has held many times that it is not bound by its previous refusal to grant writs from a decision of an appellate *214 court on a certain point of law. Colonial Pipeline Company v. Agerton, 289 So.2d 93 (La.1974) and the cases cited therein. Therefore, I think we should follow the existing jurisprudence as stated in the Court of Appeal decision in Ashley, unless or until our Supreme Court grants a writ and changes the rule.
On the merits of the issue, I think that the policy limits should be withheld from the jury not only because such evidence is irrelevant to the amount of damages, but also because it is prejudicial. It may induce juries to decide both negligence and the amount of damages on improper grounds.
Louisiana and Wisconsin have direct action statutes, and, therefore, in these two states evidence of the existence of insurance is admissible to show that the plaintiff has a right to sue the insurer directly. In other states, which do not have direct action statutes, evidence of the existence of insurance is held inadmissible both on the grounds that it is irrelevant to the issues of negligence and damages, and also on the grounds that it is prejudicial. See the Annotation, Showing As To Liability Insurance, 4 A.L.R.2d 761-825; Appleman, Insurance Law and Practice, Vol. 21, Ch. 443, Sec. 12831, et seq.
I also find it most persuasive that the new Federal Rules of Evidence, adopted by the Supreme Court of the United States and approved by the United States Congress in 1975, retain the rule that evidence of the existence of liability insurance should not go to the jury. Rule 411 states:
"Evidence that a person was or was not insured against liability is not admissible upon the issue whether he acted negligently or otherwise wrongfully. This rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership, or control, or bias or prejudice of a witness."
The comment by the Advisory Committee for the new Federal Rules of Evidence, Title 28, U.S.C.A. Federal Rules of Evidence, states under Rule 411:
"The courts have with substantial unanimity rejected evidence of liability insurance for the purpose of proving fault, and absence of liability insurance as proof of lack of fault. At best the inference of fault from the fact of insurance coverage is a tenuous one, as is its converse. More important, no doubt, has been the feeling that knowledge of the presence or absence of liability insurance would induce juries to decide cases on improper grounds. McCormick § 168; Annotation, 4 A.L.R.2d 761. . . ." (Emphasis added)
McCormick's Handbook Of The Law of Evidence, 2d Ed., Section 201, suggests that it may be time for a re-examination of the rule forbidding disclosure to the jury of the fact of insurance. The reasons stated are that the jury usually learns whether there is insurance from questions asked during examination of the jurors or from inferences drawn from questions and arguments during the trial. It is also suggested that because of new laws on no fault insurance and laws making insurance mandatory, there is less need to withhold from the jury the fact of insurance. However, I note particularly that not even McCormick suggests the amount of the policy limits should go to the jury. I also think that implicit in the reasoning by McCormick is an acknowledgment that both the fact of insurance and the amount of the policy limits is prejudicial in a jury trial. My personal view is that it is clearly prejudicial, and this is my principal reason for dissent in the present case.
It is noteworthy that McCormick, 2d Ed., Section 201, Footnote 22, cites Shingelton v. Bussey, 223 So.2d 713 (Fla.1969) which held that both the fact of insurance and the policy limits should go to the jury. However, it is pointed out by McCormick that one year later the Florida Supreme Court reversed itself, Beta Eta House Corporation v. Gregory, 237 So.2d 163 (Fla.1970) and held that policy limits should not go to the jury. Insofar as I have been able to determine, there is not one court in the United States today which permits policy limits to go to the jury, except for certain limited purposes.
*215 As to the question raised by the dissenting judge of the Court of Appeal in Ashley, of how an impecunious defendant can establish his inability to pay in a low insurance high damage situation, if he cannot show the amount of his coverage, my answer would be that if either the insured or the insurer raises the issue of the insured's inability to pay, then the policy limits would be relevant to this issue and would be admissible in evidence. Thus, I find no difficulty with this problem.
Although I disagree with the holding that the policy limits can go to the jury, I concur in the remaining portions of the majority opinion.
For the reasons assigned, I dissent in part and concur in part.
STOKER, Judge, concurring:
I concur in the majority opinion. However, I wish to express separate views concerning the admission into evidence of the liability insurance policy of Continental Insurance Company. This was a jury case. The majority opinion holds it was proper to allow the policy limits to be presented to the jury on the authority of the denial of an application for a writ of certiorari by the Louisiana Supreme Court in Ashley v. Nissan Motor Corp. in U.S.A. et al., 323 So.2d 478 (La.1975). I am not certain that we must construe the expression of the Supreme Court in its writ denial in the manner in which it is applied in the majority opinion herein.
There was a logical and persuasive reason for the Supreme Court in the Ashley case to add to its writ denial its expression of disapproval. That reason would not necessarily mean that the Supreme Court intended to imply that, as a categorical rule, juries may be, or should be, informed of policy limits. It may well be that the reason the Supreme Court qualified its writ denial was because the one defendant held liable, Michael W. Brown, gave testimony concerning his occupation and means and ability to respond to any judgment rendered against him. The Court of Appeal in Ashley referred to the principle that the trier of fact can and should consider the impecuniousness of the defendant in making an award and cited Tabb v. Norred, 227 So.2d 223 (La.App. 3rd Cir. 1973) and Williams v. Garner 268 So.2d 56 (La.App. 1st Cir. 1972). Ashley was injured in a single car accident in which Brown was the vehicle driver. The seller and the manufacturer of the vehicle were sued along with their insurers. The jury found Brown's negligence to be the sole cause of the accident.
The plaintiff has asked that the jury be informed of the policy limits of each insurer. The trial judge denied the request on the ground that it was improper to acquaint the jury with the amount of coverage involved. As Brown only was liable, his insurer was the sole insurer liable. Brown's policy provided only $5,000.00 in coverage. The award was $36,000.00. Under the circumstances it might have been to Brown's advantage rather than plaintiff, for the jury to know that Brown had only $5,000.00 in coverage. Nevertheless, it may be that the reason for the Supreme Court's qualification of the writ denial was because the special defense of inability to pay had been raised. As seen, however, the award exceeded the policy limits by a large amount.
With reference to this set of facts the Supreme Court in denying plaintiff's application writ in Ashley, said:
Writ denied. Although we do not approve that portion of the opinion which permitted the policy limits to be withheld from the trial jury, we cannot say that under the facts the result is incorrect. (Emphasis supplied.)
In view of the facts of Ashley, it does not appear to me that this expression necessarily lays down a blanket unqualified rule that policy limits constitute relevant information to be given juries in liability suits absent facts that make them relevant. Respectfully, therefore I do not subscribe to the holding of the majority opinion in this case that Ashley does lay down such a rule. However, I am of the opinion that the trial judge in this case was fully justified in admitting the policy into evidence and permitting the jury to become informed of the policy limits.
*216 To view the issue here in proper perspective, it should be noted that suit was instituted, not only against J. B. Cormier, but against the insurer of his liability, Continental Casualty Insurance Company. Under Louisiana law a liability insurer may be sued directly under the Louisiana Direct Action Statute, LSA-R.S. 22:655. The jury could not be ignorant of the fact that an insurer was involved because it was the only defendant listed in the caption of the suit. (The insured was brought in by amendment.) Inasmuch as the liability of any liability insurer is contingent on the insured being legally liable, that liability is contractual. Hence, the existence, terms, effective dates, limits of liability and all other provisions of the policy embodying the contract govern and delimit any liability of the insurer. Therefore, the existence of the policy in favor of the insured, and all its provisions become an issue, or fact, to be established just as any other fact necessary to ground the plaintiff's case.
In this case Priscilla Domingue alleged in her petition the necessary pleadings upon which a cause of action against Continental could be founded. Paragraph 10 of the petition alleges:
At the time of the accident sued upon herein J. B. Cormier was insured by a policy of automobile public liability by the defendant herein and said insurance was in full force and effect at the time of the accident.
As the suit was originally brought, Continental was the only named defendant. Cormier was named as a defendant later. Continental answered paragraph 10 in language which is more or less standard and which reads as follows:
The allegations of Paragraph Ten of the Plaintiff's Petition are denied, except, to admit that on or about the date of the accident made the basis of this litigation, there was in full force and effect a policy of liability insurance issued by CONTINENTAL INSURANCE COMPANY to Mr. J. B. Cormier, which policy is the best evidence of its terms, conditions, provisions and limitations contained therein. (Emphasis supplied.)
With the issues joined on this basis, there was no concession in the answer that the liability policy referred to by Continental insured Cormier's liability as alleged in the petition. More significant however, is the fact that Continental alleged that its policy was the best evidence of its contents. It also urged, among other things, that the policy was the best evidence of its limitations. Limitations are generally understood to cover limitations of liability.
Thus, by its pleadings Continental made a trial issue of the policy contents including the limits of its liability.
It is also noteworthy that in answer to interrogatories filed on behalf of plaintiff, Tr. 28, defendants failed to disclose the limits of coverage of Continental's policy, Tr. 30. Although the policy limits had been requested, the answers to interrogatories gave only the policy number and inclusive dates of coverage.
At the trial, before the presentation of evidence, and outside of the presence of the jury, counsel for the plaintiff asked the trial judge for a ruling on the admissibility of the Continental policy. Tr. 229-231. We gather from counsel's presentation that two judges of the same district court had adopted conflicting rules. One allowed the policy limits to go to the jury and one did not. Aside from the prejudicial effect of knowledge of the policy limits, defendant's counsel urged that the evidence of the policy was irrelevant to the question of liability. It was urged that "until there is a judgment in favor of plaintiff and against the defendant, the financial ability of the what might be paid is not a proper inquiry." Counsel for defendants further argued that the policy speaks for itself only on the question of coverage and not on the question of liability. The Court announced its view as being that the policy could be viewed by the jury as any other evidence. Defendants' counsel urged the court to reconsider its ruling, stating: "The issue of the amount of coverage has nothing to do with it as long asIf the jury finds no liability on the part of the defendant, in *217 essence, until they find liability, then the amount of coverage has nothing to do with the inquiries in this case." Counsel for defendants further argued that this court had held "that the financial ability of the defendant, basically, that's what the amount of the coverage is, is not a proper inquiry prior to judgment being rendered against the defendants." (Emphasis supplied).
Later the policy was introduced into evidence. Defendants' counsel renewed his objection citing this circuit's case of Benoit v. International Harvester Company, 251 So.2d 389 (La.App. 3rd Cir. 1971). The objection was overruled. Tr. 320. During the course of the trial the defendant, J. B. Cormier, was cross examined. He was asked if he had paid the premiums on the policy and whether it was in full force and effect at the time of the accident. The court sustained an objection to the question urged on the ground that the policy was in evidence and its effective dates were shown in the policy. Mr. Cormier was then asked if he knew the limits of his policy. The court sustained an objection to this question. The basis of the objection was that the policy in evidence was the best evidence of its contents.
From the foregoing it may be seen that defendants made an issue of the existence of insurance coverage and the policy limits at the trial stage as well as the pleading stage. Moreover, the arguments of counsel make it clear that defendants objected to the jury seeing the policy, not only because of the policy limits, but on the ground that limits were irrelevant prior to a finding of liability. Only through a bifurcated trial of some nature could effect be given to counsel's objections.
For the foregoing reasons I can concur in the majority opinion holding no error was committed by the trial judge in permitting the jury to view the Continental policy including the policy limits. This concurrence, I believe, can be reached without relying on the refusal of writs in Ashley v. Nissan Motor Corp. in U.S.A., supra.
I confess that the underlying issue of informing the jury of the limits of a liability insurance policy has meritorious arguments on both sides of the question. These positions are well set forth in the court of appeal decision in Ashley v. Nissan Motor Corp. in U.S.A. et al., 321 So.2d 868 (La. App. 1st Cir. 1975) in the majority and dissenting opinions. Insurers may well take issue with the position taken in this concurring opinion. Logically, it may be urged that, even if an insured defendant admits its policy limits in its answer, under my views there can still be no way the policy limits may be kept from the jury. Where an insurer is a defendant under the Louisiana Direct Action Statute, the jury may, and perhaps must, be told all the facts since it is the trier of fact. My own view is that if a categorical rule must be adopted (that the jury either shall or shall not be allowed to know the policy limits), then the rule should be that they shall be allowed to know.
Under our direct action statute the policy and its limits are relevant even though it may be prejudicial to inform the jury of the limits. Louisiana is one of the very few states which allow direct actions against insurers. Therefore, the rules as to relevance of any facts concerning insurance coverage developed in most other states are wholly inapplicable in Louisiana. The Louisiana Direct Action Statute has been in effect for many years. It has been thoroughly accepted. No doubt it has enabled our judicial system to function without having to face many of the vexing evidentiary problems experienced in other states relative to attempts to get information to a jury that insurance exists and to keep such information from the jury. The direct action statute was early construed as issued not primarily for the protection of the insured but to run in favor of third persons and to be for the protection of the public. Davies v. Consolidated Underwriters, 199 La. 459, 6 So.2d. 351 (1942) and West v. Monroe Bakery, 217 La. 189, 46 So.2d 122 *218 (1950). That feature has been incorporated into the statute itself.[1]
In view of the long history of apparent satisfaction with the direct action statute, the basic question under consideration here should perhaps be a matter for legislative consideration rather than judicial resolution. In any event, if we must adopt a categorical rule, I am of the opinion that less mischief will result by an open rule allowing the jury to have knowledge of the policy limits. See Judge Yelverton's dissent in the Ashley case before the Court of Appeal at 321 So.2d 868, 877.
Certainly fairness requires that if an insured defendant raises the defense that he is impecunious as a foundation for request to the jury to reduce the quantum of damages, the plaintiff should be permitted to offset such evidence by showing the policy limits. This is a special circumstance and suggests that perhaps the matter should be left to the discretion of the trial judge. Under Articles 1811 and 1812 of the Louisiana Code of Civil Procedure much control may be exercised by the trial judge through the use of written interrogatories and forms of verdict to be submitted to the jury. In practice in this state many juries are guided, as was done in this case, by the use of such interrogatories. Here, they were required to answer, affirmatively or negatively the simple questions of whether J. B. Cormier was guilty of negligence, and if so, was the negligence a proximate cause of the accident. If Cormier was negligent, and his negligence was the sole proximate cause, the jury was instructed (through the written verdict form submitted to them) to fix the monetary damages for general and special damages. By such a course of action the questions of coverage and amount of coverage became in effect, non-jury questions. In the case of the host driver, Grace Pellerin, the jury was directed to answer whether she was guilty of negligence.
The record does not indicate whether defendants' counsel knew, at the time he made his objections to introduction of the policy what the special verdict form would be. Had he known, he might have urged with reason that the policy could be introduced but that, as limits would be a non-jury question, it should not be viewed by the jury and the jury should not be informed of the limits. In most instances the parties can and do stipulate on insurance coverage and policy limits. Whether such a stipulation is entered into or the policy is admitted into evidence, if Articles 1811 and 1812 of the Code of Civil Procedure can be deemed to permit a trial court to determine what are jury issues and what issues are to be tried to the court alone, then the question may be controlled by leaving the question to the discretion of the trial judge in a jury case. This seems to me to be the preferable rule.
In summary, my views are as follows.
If the trial judge does not have authority to delimit the jury issues, and if a plaintiff may demand a jury determination of policy limits, perhaps legislative consideration is in order. Until the Louisiana Supreme Court has spoken more explicitly and authoritatively, if a categorical rule must be adopted, *219 it is my view that the fairer rule would be to admit policies and allow the juries to know of their contents including limits. For my own part I would hold that the trial judge has the authority to withdraw undisputed questions of coverage and amounts of coverage from jury consideration and withhold information concerning policy limits from the jury. Therefore, I concur in the majority opinion in this case.
NOTES
[1] There is no explanation of the discrepancy between the findings of the two physicians as to the location of the disc injury.
[1] The pertinent provisions of the Louisiana Direct Action Statute, LSA-R.S. 22:655 read as follows:

* * * The injured person or his or her survivors or heirs hereinabove referred to, at their option, shall have a right of direct action against the insurer within the terms and limits of the policy; and such action may be brought against the insurer alone, or against both the insured and insurer jointly and in solido, . . . It is the intent of this Section that any action brought hereunder shall be subject to all of the lawful conditions of the policy or contract and the defenses which could be urged by the insurer to a direct action brought by the insured, provided the terms and conditions of such policy or contract are not in violation of the laws of this State.
It is also the intent of this Section that all liability policies within their terms and limits are executed for the benefit of all injured persons, his or her survivors or heirs, to whom the insured is liable; and that it is the purpose of all liability policies to give protection and coverage to all insureds, whether they are named insured or additional insureds under the omnibus clause, for any legal liability said insured may have as or for a tort-feasor within the terms and limits of said policy.