423 So.2d 1198 (1982)
Myrna BRISCOE and Ruby Morton
v.
Walter STEWART and Cumis Insurance Society, Inc.
No. 12898.
Court of Appeal of Louisiana, Fourth Circuit.
November 2, 1982.
Rehearing Denied January 14, 1983.
*1199 C. Joseph Murray, Murray, Murray, Ellis, Braden & Landry, New Orleans, for plaintiffs-appellees.
Porteous, Toledano, Hainkel & Johnson, David J. Mitchell, New Orleans, for defendants-appellants.
Before REDMANN, C.J., AUGUSTINE and LOBRANO, JJ.
AUGUSTINE, Judge.
On Sunday, August 27, 1978, as Myrna Briscoe and Ruby Morton were driving to church, the automobile in which they were travelling was struck by another vehicle at the intersection of North Prieur and Laharpe Streets. The collision was the result of the negligence of defendant Walter Stewart, who disregarded a stop sign. The impact of the collision sent Ms. Briscoe's vehicle careening into a house situated at that intersection; it ultimately came to rest against the front steps. Later, plaintiffs Briscoe and Morton filed this suit against Walter Stewart, who was uninsured, and Cumis Insurance Society, Inc., Briscoe's uninsured motorist carrier. Following trial by jury, Briscoe was awarded damages in the amount of $6,822.00; Ruby Morton received $7,438.00. From this judgment, the defendant Cumis Insurance appeals.[1]
The only issues presented to this court by the appellant are:
1) Whether the jury's awards to each plaintiff were excessive, and
2) Whether the trial court erred in allowing the jury to view the insurance policy issued by Cumis to Myrna Briscoe.

I
As to Ms. Briscoe's award, the operable facts are these:
*1200 Ms. Briscoe testified that although she was in a state of shock immediately after the accident and did not think she was seriously injured, afterward, she began to experience considerable pain in her neck region. The day after the accident, she visited the offices of Dr. Henry Braden, III, for an examination. Dr. Braden discovered that Ms. Briscoe had suffered a bilateral posterior cervical muscle spasm and noted that her motion was limited in all directions. X-rays revealed a reversal of the normal cervical and thoracic curve and a subluxation of the C-4 and C-5[2] vertebrae. The doctor treated Ms. Briscoe for a period of three and a half months, during which time she received physical therapy on twenty-nine separate occasions. Ms. Briscoe's medical bill totalled $735.00. During the period of Ms. Briscoe's injury, she suffered constant pain which continued even after her discharge from treatment, thus significantly curtailing her activities. She was unable to turn her head in a normal fashion and was required to use a heating pad to alleviate the pain even while at work. Simple tasks such as tying a shoe caused her great discomfort, and she frequently found it necessary to avoid socializing and housework. In addition, Ms. Briscoe was forced to abandon her part-time work as real estate agent.
Ruby Morton's injuries arose when the impact of the collision flung her against the dashboard, causing bruises to her right shoulder and hip. For a brief period of time after the accident, Ms. Morton was unable to move her right arm without great discomfort. Dr. Braden diagnosed contusions to the skull, the right shoulder and hip, and cervical sprain. X-rays of the cervical spine revealed partial subluxation of the C-3 and C-4 vertebrae. As in the case of Ms. Briscoe, Ms. Morton was required to undergo physical therapy, although for a shorter period of almost two months. Her medical expenses amounted to $625.00. During the period of her treatment, Ms. Morton's normally active life became substantially restricted, as she was unable to continue her part-time work as a beautician. She was able to maintain her regular secretarial work, but only with the constant assistance of fellow employees. She frequently spent sleepless nights because of the pain in her shoulder and neck, and was forced to forego sexual contact with her husbandthey were newlyweds. For a time after the accident, Ms. Morton was unable to perform household chores or drive an automobile due to the inability to rotate her head.
Upon review of a jury's award of damages, an appellate court is constrained to follow several limiting principles. First, we are reminded that assessment of damages is the province of the trier of fact, whose judgment is allowed great discretion and deference. Moreover, an award of damages cannot be disturbed unless the appellate record clearly reveals that the trier of fact abused its great discretion. If such is the case, the reviewing court may modify the award, but only to the extent of lowering it to the highest point which is reasonably within the discretion afforded the finder of fact. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977); Reck v. Stevens, 373 So.2d 498 (La.1979). The appellate court's modification of the award must be based upon a particularized inquiry as to the injuries suffered by this plaintiff. Reference to similar cases in our jurisprudence is therefore of limited value in determining the appropriateness of an award. Reck, supra. It has been noted by this court that where the injury is the kind that is involved in the present case, any award, but particularly one from a jury, is difficult to evaluate. The plaintiffs' demeanor, the believability of their experiences, the medical evidenceall play an integral part of each juror's resolution of quantum. Kostrzewa v. Wilson, 397 So.2d 859 (La.App. 4th Cir. 1981).
In the present case, each plaintiff impressed the jury with her veracity in *1201 telling of the accident itself, which would have induced substantial mental suffering in any normal person. The jury apparently believed each plaintiff when she testified that her normal life was significantly altered by pain and immobility of the head. Medical testimony verified their suffering each plaintiff was found to have partially dislocated vertebrae.
To conclude, we cannot say that on the basis of the record presented, the jury clearly abused its discretion. We therefore must allow each award to remain intact.

II
The defense presented no witnesses at trial. The only evidence admitted in its behalf was the insurance policy issued by Cumis to Myrna Briscoe. During deliberation, the jury foreman asked to see that document, which by its own terms, of course, established the limit of Ms. Briscoe's coverage for an accident such as the one in question. Over objection by the defendant, the trial judge sent the policy into the jury room. Appellant now complains that to do so was error, it being his contention that such evidence in the hands of the jury is inherently prejudicial and that the jury's award reflects that fact.
Appellees, on the other hand, rely upon Courville v. State Farm Mutual Automobile Insurance, 386 So.2d 176 (La.App. 3rd Cir. 1980) for the proposition that once any documenteven an insurance policyis admitted into evidence, it may be viewed by the jury on its request.
We disagree. Louisiana Code of Civil Procedure Art. 1794 governs this issue. It provides:
"In reaching a verdict the jurors must rely upon their memories, and, when they retire from the jury room to deliberate, they shall not be allowed access to any written evidence ... but they may take with them any document received in evidence which requires a physical examination to enable them to arrive at a just conclusion."
We do not think the above article stands for the proposition that the jury may view any document whatsoever so long as it has been admitted into evidence. To the contrary, Art. 1794 says that submission of written evidence to the jury shall be the exception rather than the rule, and shall be allowed only where physical inspection is necessary to arrive at a just verdict. It follows that, as a precondition to inspection by the jury, the writing must be, at the very least, relevant to some material issue in dispute. Beyond that, it must be more probative than prejudicial.
With regard to the question whether physical inspection of the insurance policy by the jury was necessary to the just resolution of this case, we immediately note that the terms of the policy were completely irrelevant to any factual dispute. Moreover, we recognize the great prejudice that may result when the fact of insurance is injected into a case. Although Louisiana courts do not often have occasion to pass upon the issue, the majority of the other States have decided that evidence which informs the jury that the defendant is insured shall be generally inadmissible. Their case law on this question universally expresses the opinion that the law abhors the prejudice ordinarily engendered by bringing the fact of insurance before the jury, and only under exceptional circumstances will such prejudice be outweighed by superior considerations. See cases collected at 4 A.L.R.2d 748. In Louisiana, the danger of prejudice is often present by the mere fact that an insurer may be sued directly as a party defendant. La.R.S. 22:655. In the absence of true necessity, that risk should not be increased by allowing the jury to view the policy itself, La.C.C.P. Art. 1794, and that rule should apply whether the policy is the defendant's insurance contract or whether, as here, it is the plaintiff's uninsured motorist policy.
In the present case, although we think it was error for the trial court to allow the jury to inspect the insurance policy, we are convinced that the error was harmless.
First, there was no serious contest as to liability, and injury was abundantly proved. The total liability of Cumis Insurance under its contract was $15,000.00. The plaintiffs, *1202 who were both covered by Briscoe's policy, were awarded, together, almost eight hundred dollars less than that figure, which indicates that the jury was not appreciably influenced by its knowledge of the policy limit. Finally, the damages recovered by each plaintiff were well within the range normally awarded for such injuries.
For the reasons stated, the verdict and award against the defendants in favor of each plaintiff are affirmed.
AFFIRMED.
REDMANN, C.J., dissenting in part.
REDMANN, Chief Judge, dissenting in part.
The objection to a jury's being informed of insurance limits is not merely that the limits are irrelevant (although they are) but that they are also prejudicial to the jury's impartial determination of the amount of damages. For that reason, it is not harmless error to inform the jury of the limits. It is prejudicial error.
Both to prevent a repetition of like error in future cases and to do justice in this case, we should ignore the amounts the jury fixed and ourselves fix amounts on the basis of our independent evaluation of the record.
NOTES
[1] Defendant Walter Stewart did not appear at trial and has not perfected an appeal to this court.
[2] Subluxation is defined as an incomplete or partial dislocation. Steadman's Medical Dictionary, unabridged edition, 1961.