537 So.2d 1275 (1989)
Robert Lynn JONES, Plaintiff/Appellant,
v.
Raymond L. LINGENFELDER, et al., Defendants/Appellees.
No. 20219-CA.
Court of Appeal of Louisiana, Second Circuit.
January 18, 1989.
Writ Denied March 10, 1989.
*1276 Bruscato, Loomis & Street by C. David Street, Monroe, for plaintiff/appellant.
Hayes, Harkey, Smith, Cascio & Mullens by Charles S. Smith, Monroe, for defendants/appellees.
Before HALL, MARVIN and FRED W. JONES, Jr., JJ.
HALL, Chief Judge.
This is a suit for damages for personal injuries received in an automobile/motorcycle accident which occurred on December 14, 1984 on DeSiard Street in Monroe. Plaintiff, Robert Lynn Jones, was operating his 1972 Triumph motorcycle in a westerly direction on DeSiard Street when he collided with a left-turning 1983 Plymouth Reliant automobile operated by the defendant Raymond L. Lingenfelder. The case was tried by jury which returned a verdict in favor of the plaintiff finding the defendant 90% at fault and the plaintiff 10% at fault. The jury awarded $8,000 special damages and $7,000 general damages. Judgment was rendered in favor of plaintiff for $13,500.
The plaintiff has appealed claiming as error several of the trial court's evidentiary rulings and attacking certain jury instructions. *1277 Plaintiff also argues the jury's determination that he was 10% at fault is clearly wrong and that the award for damages was inadequate.
We reverse the finding that plaintiff was 10% at fault and correspondingly increase the award to plaintiff from $13,500 to $15,000; otherwise the judgment is affirmed.
This accident occurred between 4:30 and 5:00 on a Friday afternoon when the defendant turned left in the path of the plaintiff. DeSiard Street, at the location of this wreck, is a four-lane thoroughfare with a double yellow line separating the two eastbound lanes from the two westbound lanes. Defendant, travelling east, activated his left turn signal and proceeded across the center line and the inside west bound lane. Plaintiff's motorcycle collided with the front of defendant's vehicle in the outside westbound lane. Plaintiff was thrown from his motorcycle 10 to 15 feet from the point of impact. He was wearing a helmet at the time and sustained injuries to his lower back, neck, wrists, and left knee. Plaintiff was taken to the hospital where he was x-rayed and his abrasions were treated. He was prescribed medicine and sent home the day of the accident.
On appeal, plaintiff has presented eight specifications of error.
Specification of Error No. 1
By this specification of error plaintiff contends the trial court erred when it allowed the presentation of a video reenactment of the accident produced by defendant. The video recreated the actions of the defendant and was offered in an attempt to clarify defendant's testimony concerning how he turned left and the length of time it took him to turn left. The defendant used a different vehicle than the one actually involved in the accident and the video was made during rainy conditions which were contrary to the dry, clear conditions at the time of the accident.
Plaintiff argues the conditions present during the reenactment are so different from the actual conditions at the time of the accident that the video tape should not have been admitted into evidence. Defendant testified he was uncertain as to the exact point where he crossed the center line at the beginning of his sweeping left turn and plaintiff argues this is a crucial fact which must be known for defendant's expert to make his time and distance calculations. Those calculations were presented by defendant's expert in an attempt to prove the plaintiff had enough time to stop had he been attentive.
The determination of whether a motion picture or video tape is admissible is largely within the discretion of the trial court. Lafleur v. John Deere Co., 491 So.2d 624 (La.1986); Owens v. Thornton, 349 So.2d 431 (La.App. 4th Cir.1977); Ashley v. Nissan Motor Corp. in U.S.A., 321 So.2d 868 (La.App. 1st Cir. 1975), writ denied, 323 So.2d 478 (La.1975).
The video tape showed only a vehicle, apparently driven by the defendant, make a left turn stopping at the point of impact and then proceeding into the car wash parking lot where defendant was headed at the time of the accident. After reviewing this tape we determine that the trial court committed no error in allowing the introduction of this evidence. Although the vehicle and conditions were different, the defendant was the driver and testified that he performed the same turn on video tape that he executed at the time of the accident. Although the video tape alone would not have been admissible evidence without the actual testimony of the defendant, the tape was admissible with defendant's testimony.
This specification of error lacks merit.
Specification of Error No. 2
Rick Robinette, a mechanical automotive engineer, testified at trial on behalf of the defendant as an expert in accident reconstruction. In making his calculations, Mr. Robinette went to the scene of the accident more than two years after the accident and timed various vehicles making left turns as described by the defendant and shown on the video. Plaintiff argues this information was irrelevant and immaterial. Defendant argues his expert was not attempting to create an exact reproduction of the accident but rather an estimate, using scientific principles. The expert testified *1278 that he used the turning times of the other vehicles to support the time period he observed in the video tape as being consistent with other motorists.
Mr. Robinette determined from the video tape that it took Mr. Lingenfelder three and one-half seconds to stop after he began the left-turning motion. This is consistent with the turning times of the other vehicles which ranged from 3.5 to 6.6 seconds, although the observed vehicles did not stop at the point of impact. While this evidence could have been excluded by the trial court as being immaterial or irrelevant, admitting this evidence was not an abuse of the trial court's discretion.
This specification of error lacks merit.
Specification of Error No. 3
By this specification of error plaintiff argues the trial court erred in sustaining defendant's hearsay objection concerning testimony of the plaintiff.
After the accident plaintiff was treated at a local hospital emergency room and released. Plaintiff then attempted to obtain medical treatment at an orthopaedic clinic in Monroe but was unable to get an appointment. Plaintiff contacted his lawyer who referred him to Dr. J. Lee Etheridge in Shreveport the week following the accident. Approximately a year and a half later plaintiff was examined by Dr. Douglas C. Brown of the orthopaedic clinic in Monroe at the request of defense counsel.
At trial plaintiff attempted to testify as to what he was told by the orthopaedic clinic when he tried to get an appointment the week after the wreck. Defendant objected claiming such testimony was hearsay and the trial court sustained the objection. Plaintiff maintains there was an inappropriate connection between defense counsel and Dr. Brown because defense counsel was apparently able to obtain an appointment for plaintiff with little delay.
Hearsay testimony consists of out of court statements which are offered to prove the truth of the matter asserted. Hearsay has been juridically described as evidence, the probative force of which depends upon the competency and credibility of some person other than the witness, which is inadmissible because of the inherent lack of opportunity to ascertain its veracity by cross-examination. Hearsay is by its very nature second hand information. It is knowledge of what another said as opposed to direct observation of the events or facts at issue. Stephens v. State Through Department of Transportation, 440 So.2d 920 (La.App. 2d Cir.1983) writ denied, 443 So.2d 1119 (La.1984).
Plaintiff was intending to testify as to what he heard another say outside of court. This is clearly hearsay and the trial court correctly sustained defendant's objection.
Specification of Error No. 4
Plaintiff argues that the trial court erred in granting the defendant's motion in limine preventing the plaintiff from informing the jury of the liability insurance policy limits. Cases addressing the issue are not entirely clear or consistent.
The Third Circuit has found no error in allowing the disclosure of the liability insurance policy limits to the jury, Domingue v. Continental Ins. Co., 348 So.2d 209 (La.App. 3d Cir.1977) and Andrews v. Mosley Well Service, 514 So.2d 491 (La. App. 3d Cir.1987), writ denied, 515 So.2d 807 (La.1987), and non-prejudicial error in failing to allow the jury to see the policy limits, Bishop v. Shelter Ins. Co., 461 So.2d 1170 (La.App. 3d Cir.1984), writ denied, 465 So.2d 737 (La.1985). Inconsistently, the Third Circuit held in Ponder v. Groendyke Transport, Inc., 454 So.2d 823 (La.App. 3d Cir.1984), writ denied, 457 So.2d 1195 and 1198 (La.1984), that the trial court erred in permitting plaintiffs to disclose the policy limits to the jury but that the error did not justify reversal. The Domingue, Bishop and Andrews cases relied upon the Supreme Court's denial of a writ in Ashley v. Nissan Motor Corp in U.S.A., supra, which stated:
"Although we do not approve of that portion of the opinion which permitted the policy limits to be withheld from the trial jury, we cannot say that under the facts the result is incorrect." 323 So.2d 478."
*1279 These cases also relied on language in Arceneaux v. Domingue, 365 So.2d 1330 (La.1978), to the effect that the trial court erred in refusing to inform the jury about a stipulation of insurance coverage and limits because the jury is entitled to know all the evidence.
The First Circuit followed the Third Circuit's interpretation of the Ashley writ denial statement and held that policy limits may be disclosed to the jury in Case v. Arrow Trucking Co., 372 So.2d 670 (La. App. 1st Cir.1979), writ denied, 375 So.2d 944 (La.1979).
The Fourth Circuit has found no error where the trial judge refused to allow the jury to know the policy limits because one's financial status is irrelevant unless the defendant has put his financial status at issue by raising his inability to pay as a defense. Moffett v. Lumpkin, 382 So.2d 278 (La. App. 4th Cir.1980). See also Briscoe v. Stewart, 423 So.2d 1198 (La.App. 4th Cir. 1982), writ denied, 432 So.2d 266 (La.1983), where the Fourth Circuit found harmless error in allowing the jury to inspect the insurance policy filed into evidence.
Subsequently, the Supreme Court held in Rodriguez v. Traylor, 468 So.2d 1186 (La. 1985), that "... the wealth or poverty of a party to a lawsuit is not a proper consideration in the determination of compensatory damages. Each litigant should stand equal in the eyes of the law regardless of his financial standing." 468 So.2d 1188. In Rodriguez the Supreme Court overruled the long-standing jurisprudential rule that one may offer one's inability to pay a judgment as a defense. Prior to Rodriguez if the defendant presented his inability to pay as a defense then the plaintiff was allowed to present the limits of any liability insurance policy. Suhor v. Gusse, 388 So.2d 755 (La.1980).
Rodriguez did not involve disclosure of insurance policy limits to a jury, but it can be argued that if neither the wealth nor poverty of a party is a proper consideration in determining compensatory damages, evidence of the amount or limits of insurance coverage is not relevant or material and should not be presented to the jury.
Two Court of Appeal decisions decided after Rodriguez have mentioned the issue, without deciding it and without mentioning Rodriguez. In Carson v. Witty, 471 So.2d 1003 (La.App. 1st Cir.1985), the court found it unnecessary to decide if the trial court erred in refusing to allow plaintiff to discuss the policy limits before the jury because limits have no relation to damages sustained. There was no abuse of discretion by the trial court. In Miller v. Atlantic Richfield Co., 499 So.2d 1095 (La.App. 3d Cir.1986), writ denied, 501 So.2d 198 (La.1986), the court found it unnecessary to decide whether disclosure of policy limits is forbidden and that no harm had resulted from allowing disclosure of limits to the jury in that case.
Although not applicable to this case, Article 411 of the new Code of Evidence, effective January 1, 1989, provides a precise rule governing disclosure of policy limits to a jury:
Although a policy of insurance may be admissible, the amount of coverage under the policy shall not be communicated to the jury unless the amount of coverage is a disputed issue which the jury will decide.
This court has apparently not previously addressed this issue. We now hold, based on the Rodriguez rationale and consistent with the clarifying rule adopted in the new Code of Evidence, that the trial court's refusal to allow the jury to know the limits of the liability insurance policy was not error. The defendant's wealth or poverty should not be a consideration when determining the proper award of damages for injuries the plaintiff has sustained. Even if the trial court's ruling be considered erroneous under prior jurisprudence, the error was not prejudicial to the plaintiff and was harmless.
Specification of Error Nos. 5 & 6
By these specifications of error plaintiff argues jury instructions were not adequate; namely, that the trial court should have given a special jury instruction concerning the testimony of the treating physician being more credible than the testimony of a non-treating physician and that *1280 the instructions concerning damages and comparative negligence were misleading.
In response to plaintiff's objection to the court's failure to include the jury instruction concerning the relative weight of each physician's testimony, the trial court found that the general charge concerning the evaluation of each witness's testimony sufficiently covered the subject.
Adequate jury instructions are those which fairly and reasonably point up the issues and which provide correct principles of law for the jury to apply to these issues. The adequacy of a jury instruction must be determined in light of the jury instructions as a whole. Laborde v. Velsicol Chemical Corp., 474 So.2d 1320 (La.App. 3d Cir. 1985), writ denied 480 So.2d 738 (La.1986).
In the instant case the trial court gave clear instructions to the jury concerning their obligation to determine the credibility of each witness and general guidelines on how to fulfill that obligation. The trial court also gave clear instructions on weighing the credibility of expert witnesses using the same general guidelines applicable to all witnesses.
We find the trial court's jury instructions adequately covered the law concerning the jury's duty to properly weigh the testimony of each witness.
Plaintiff also complains the jury was misled by the instructions given by the trial judge in answer to a question posed by the jury concerning the interrogatories to be answered by them.
Four interrogatories, not objected to by plaintiff, were posed to the jury, as follows:
On page 1:
1. Has it been proven by a preponderance of evidence that there was any negligence on the part of Raymond L. Lingenfelder which was a proximate cause of the injuries of which plaintiff, Robert Lynn Jones, complains?
2. If your answer to No. 1 is "Yes", has it been proven by a preponderance of evidence that there was any negligence on the part of Robert Lynn Jones which was a proximate cause of the injuries of which he complains?
3. If your answer to No. 2 is "Yes", state the percentages of negligence of Raymond Lingenfelder and Robert Lynn Jones which contributed to such injuries.
On page 2:
1. What sums of money will justly compensate plaintiff, Robert Lynn Jones, for those proven damages you find he sustained as a result of the accident?
During deliberations the jury asked the judge, "Does the answer to number 3 directly relate to the answer of number 1 on the second page?" The trial court's reply to the jury stated, "Those questions are independent, separate from one another. You are here to decide the question of damages and the question of negligence."
Plaintiff argues that the court should have advised the jury that plaintiff's damages would be reduced by the percentage of negligence attributed to plaintiff.
The interrogatories posed to the jury follow closely the form of the questions outlined in LSA-C.C.P. Art. 1812. The jury's function is to determine the percentage of fault, if any, of the party claiming damages and the total amount of damages sustained by that party. Insofar as the jury's function is concerned, those determinations are independent and separate from one another. The trial court's explanation was correct and proper. There was no need to advise the jury as to the effect of the percentages of negligence on the amount of recovery by the plaintiff. These specifications of error lack merit.
Specification of Error No. 7
Plaintiff argues the jury's finding that the plaintiff was ten percent at fault in causing this accident is clearly wrong. Plaintiff argues the jury based this determination on the testimony of defendant's expert, Rick Robinette, whose testimony was based upon the video tape showing defendant making the left turn and not on facts established at trial.
Defendant presented evidence at trial attempting to prove the plaintiff would have been able to stop had he been attentive. The critical questions to be answered are at what point did defendant cross the center *1281 line and when should plaintiff have been aware of the impending collision. Defendant admits he never saw plaintiff as he began his turn and that he does not know where he crossed the center line when he began his sweeping left turn. From the video tape reenactment defendant's expert determined it took defendant three and one-half seconds to travel from the point where he began his left turn to the point of impact. Mr. Robinette was of the opinion that plaintiff would have been 130 to 155 feet away from the point of impact at the time defendant began his left turn based upon the three and one-half second turning time in the video tape. Plaintiff testified he first saw the defendant's car when it was 10 to 15 feet in front of him.
The courts of this state have held on many occasions that a left turn is one of the most dangerous maneuvers a motorist may execute, and that when making such a turn a motorist should execute great caution. See Freeman v. Liberty Mutual Ins. Co., 175 So.2d 659 (La.App. 1st Cir.1965), and Ebey v. Coggins, 474 So.2d 1352 (La. App. 2d Cir.1985). There is no question that defendant was at fault and that his fault was the primary precipitating cause of the accident. The question is whether defendant carried his burden of proving some degree of fault on the part of plaintiff which was a contributory cause of the accident.
The standard of appellate review is that an appellate court should not disturb a factual finding in the absence of manifest error. The appellate review of facts is not completed by reading so much of the record as will reveal a reasonable factual basis for the finding in the trial court; there must be a further determination that the record establishes that the finding is not clearly wrong. Arceneaux v. Domingue, supra.
The evidence is clear that plaintiff was operating his motorcycle in a normal manner at a safe speed in his proper lane of travel. One travelling in his proper lane has the right to assume that on-coming and left-turning traffic will obey the laws and allow him to continue in that proper lane. Bailes v. Casualty Reciprocal Exchange, 279 So.2d 255 (La.App. 2d Cir.1973), writ denied, 281 So.2d 747 (La.1973); Ricker v. Thompson, 394 So.2d 831 (La.App. 4th Cir. 1981).
Although the testimony of defendant's expert witness supports the finding of some negligence on the part of plaintiff, we find that testimony is based upon the incorrect assumption that plaintiff should have been aware of defendant's intention to turn left at the time defendant began his turning motion before defendant crossed the center line. As stated above, plaintiff had the right to assume that he could continue in his proper lane of travel and that defendant would not impede that right. Defendant's expert opined that plaintiff should have been aware that defendant was turning approximately three and one-half seconds before the impact when plaintiff was approximately 130 to 155 feet away from the point of impact. The opinion is based on an incorrect perception of plaintiff's duty to keep a proper lookout. Plaintiff did not have the duty to anticipate the defendant was going to impede his lane of travel at the time defendant began making his turn before he crossed the center line. To the contrary, plaintiff was entitled to assume that defendant would stop before crossing the center line into plaintiff's lane of travel. Without the expert's testimony that plaintiff should have seen defendant three and one-half seconds before impact, the evidence fails to show at what point in time and distance plaintiff should have been aware of the impending danger and whether plaintiff could have avoided the collision at the point where he should have been aware of the danger. The time between the moment defendant crossed the center line and the moment of impact was necessarily substantially less than three and one-half seconds and plaintiff was substantially less than 130 to 155 feet from the point of impact when defendant crossed into his lane of travel. The evidence does not support a finding that plaintiff could have stopped in time to avoid the accident after he became aware *1282 or should have been aware that defendant was turning left in front of him.
We find the defendant has failed to carry his burden of proving the plaintiff was negligent and therefore reverse the jury's determination that plaintiff was 10% at fault and place 100% of the negligence on defendant.
Specification of Error No. 8
Finally, plaintiff argues the award of $8,000 in special damages and $7,000 in general damages is inadequate. Plaintiff incorporates his argument concerning the trial court's failure to give the jury an instruction that a treating physician's testimony is entitled to greater weight than that of the non-treating physician with this argument.
Plaintiff's treating physician, Dr. Etheridge, saw plaintiff approximately eight times from December 21, 1984 through November 19, 1985. On the first visit Dr. Etheridge found the patient suffered from pain in his neck and lower back. He prescribed an anti-inflamatory medication, muscle relaxants, and a soft cervical collar for his neck. In the following visits the plaintiff continued to complain of pain in his neck with little or no limitation in motion of his neck. Dr. Etheridge found no muscle spasms and no neurological or vascular injuries. On March 27, 1985 Dr. Etheridge found no reason why plaintiff could not do the same work such as bending over associated with his previous employment as a water meter reader. However, he thought that the bending over and digging associated with the repair of water meters may be too strenuous. Dr. Etheridge continued plaintiff on light work until November of 1985 when he advised that the plaintiff should avoid very strenuous work but moderate work with 50 to 60 pounds lifting limit would be acceptable. Dr. Etheridge concluded that plaintiff was likely to have future problems associated with his neck injury and that, in his opinion, the plaintiff suffers from a 2% permanent physical impairment to his body as a whole due to his neck injury.
Dr. Douglas C. Brown saw plaintiff once on April 30, 1986 and performed a complete physical examination of him. He found no objective signs of pain and no degree of permanent disability. Dr. Brown disagreed with Dr. Etheridge's restriction that plaintiff could not engage in heavy work for an indefinite period of time. Dr. Brown was of the opinion that the plaintiff could perform almost any type of manual labor.
Dr. Richard Galloway testified on behalf of the plaintiff as an expert in the field of rehabilitation and vocational counseling. After performing various physical and mental tests upon plaintiff, Dr. Galloway determined plaintiff has good dexterity but found that ninety-six percent of the population would have as much or more mental ability than plaintiff, primarily because he dropped out of school in the eighth grade. Dr. Galloway determined the plaintiff's theoretical access to jobs before and after the accident and determined that based upon minimum wages the plaintiff has lost $5.89 a week. Dr. Galloway found that many of the restrictions to jobs the plaintiff faced were due to conditions existing prior to the accident.
Dr. Charles Bettinger testified on behalf of the plaintiff as an expert in economics, statistics, and estimating future and past losses. He determined plaintiff's past earnings at minimum wage and subtracted the amount he actually made to arrive at past lost wages of $14,800. He also projected the plaintiff's loss of $5.89 per week over an expected work-life of 36.7 years and then discounted that figure to present value. Dr. Bettinger determined his loss of future income to be $33,328.00. Dr. Bettinger stated that if plaintiff were able to go back to work at the same level then there would be no loss. The record reveals plaintiff was working after the accident for over a year making minimum wage until he was fired due to a misunderstanding.
Plaintiff suffered cervical and lower back sprains or strains and continued to experience some degree of pain for almost a year. The extent of his disability during that time was not significant as evidenced by the fact that he continued to work at the same job and wage for almost a year after *1283 the accident until he was fired. The evidence does not establish that plaintiff was or is significantly physically disabled from working because of the injuries received in the accident, diminishing the value of the testimony of the vocational and economic experts as to past and future lost earning capacity. The award for general damages is on the low side, but is not an abuse of discretion. The jury's award of $15,000 in total damages is not so inadequate as to justify an increase on appellate review.
Decree
For the foregoing reasons the judgment of the trial court is reversed insofar as it found plaintiff to be 10% at fault and reduced plaintiff's recovery by that percentage. The judgment is amended to increase the amount of the award from $13,500 to $15,000. Otherwise, the judgment is affirmed. Costs of the appeal are assessed to the defendants.
REVERSED IN PART, AMENDED, AND OTHERWISE AFFIRMED.