583 So.2d 541 (1991)
Ronald E. PRINCE and Diane A. Prince, Individually and on Behalf of Their Deceased Minor Son, Garon Cole Prince, Plaintiffs-Appellees,
v.
A.J. MATTALINO, M.D., Shriner's Hospital for Crippled Children and Richard E. McCall, M.D., Defendants-Appellants.
No. 90-84.
Court of Appeal of Louisiana, Third Circuit.
June 26, 1991.
Lunn, Irion, Johnson, Salley & Carlisle, James B. Gardner, Shreveport, for defendants-appellants.
Orrill & Shearman, R. Ray Orrill, Jr., New Orleans, Baggett & McCall, Bob McCall, Lake Charles, for plaintiffs-appellees.
Before STOKER, LABORDE and KNOLL, JJ.
LABORDE, Judge.
Plaintiffs, Ronald E. Prince and Diane A. Prince, individually and on behalf of their deceased minor child, Garon Cole Prince, brought this suit for damages caused by the wrongful death of their child. Several *542 defendants were named in the original suit, a number of which qualified as qualified health care providers pursuant to LSA-R.S. 40:1299.41. One of the qualified health care providers, Shriner's Hospital for Crippled Children (Shriner's Hospital), admitted liability for the wrongful death of the child. Shriner's Hospital tendered $100,000.00 in settlement to plaintiffs. Plaintiffs accepted the settlement and reserved their rights to proceed against the Louisiana Patient's Compensation Fund. In a pleading styled "Joint Petition for Court Approval of the Settlement of a Medical Malpractice Claim and Claimant's Demand for Payment of Damages from the Patient's Compensation Fund" plaintiffs averred that they and the Commissioner of Insurance were unable to agree on the amount of excess damages to be paid out of the Louisiana Patient's Compensation Fund, and, accordingly, sought judicial determination of such amount. This matter came before a jury on September 25, 1989. The jury awarded $100,000.00 in survival damages and $400,000.00 each to Ronald E. and Diane A. Prince for the wrongful death of their son. In accordance with LSA-R.S. 40:1299.42, the trial judge, in judgment dated October 26, 1989, made a lump sum award of $500,000.00 to the plaintiffs which constituted the statutory maximum. This award was made subject to a credit of the $100,000.00 previously paid in settlement. From this judgment, defendants, Douglas D. Green, as Commissioner of Insurance for the State of Louisiana, the Office of the Attorney General and the Louisiana Patient's Compensation Fund, appeal. We affirm.

FACTS
Cole Prince, the youngest of Ronald E. and Diane A. Prince's three sons, was born on January 3, 1983. Cole was born with a deformity of the feet commonly referred to as club-feet. His feet were casted the day after he was born and the casts were changed every two weeks to account for growth. Cole had his first corrective surgery when he was three months old. The surgery involved clipping the tendons to release the feet. At six months, Cole returned to the hospital to have pins inserted in his feet. Cole had several similar procedures performed on him during his first year.
Despite Cole's handicap and the physical as well as emotional strain caused by the successive surgical procedures, he possessed an unbridled enthusiasm for life. By all accounts, Cole was a well-adjusted albeit extremely active child. He taught himself how to walk and, in time, to run, swim and climb trees. Cole also loved animals and particularly enjoyed riding the horse that his grandfather gave him.
On or about October 9, 1985, Cole was admitted to Shriner's Hospital in Shreveport for another corrective surgery. The corrective surgery was scheduled for October 14, 1985. The record establishes that approximately nine hours after the surgical procedure was performed, Cole began experiencing brain seizures. He was transported to the emergency room, and soon thereafter, in the early morning hours of the 15th, he was transferred to the intensive care unit of the LSU Medical Center in Shreveport. According to the LSU medical records, Cole was comatose upon his admission to LSU. At approximately 4:00 p.m. on October 15, 1985, Cole was declared brain dead. The cause of his death was considered to be cerebral edema with herniation of the brain tissue due to overhydration. After consultation, the Princes decided to release Cole's organs to the hospital's organ donation program.

PLAINTIFFS' MOTION TO DISMISS SUSPENSIVE APPEAL
On November 21, 1989, defendants filed a suspensive appeal from the trial court's judgment awarding plaintiffs $500,000.00 in damages. In response, plaintiffs filed a motion to dismiss the suspensive appeal and convert same to a devolutive appeal. Plaintiffs allege in their motion that defendants failed to furnish the necessary security for a suspensive appeal and, therefore, the suspensive appeal should be dismissed and converted into a devolutive appeal. On February 13, 1990, the trial court held a hearing on the motion to dismiss. The court's minute entry reflects *543 that the motion was denied. The minute entry also states that counsel for plaintiff "notes his appeal at this time." There is no written motion for appeal filed on behalf of the plaintiffs contained in the record on appeal, nor did plaintiffs answer defendants' appeal. In addition there is nothing in the minute entry which would establish that the trial court granted an appeal based on oral motion. Absent a written or oral order of appeal, this court is without jurisdiction to consider the trial court's denial of plaintiffs' motion to dismiss. LSA-C.C.P. art. 2121; Davis v. Funderburk, 274 So.2d 781 (La.App. 3d Cir.1973).

QUANTUM
Defendants argue that the trial court abused its discretion in awarding excessive damages. The assessment of damages is the province of the trier of fact, whose judgment is allowed great discretion and deference. An appellate court can only disturb an award made by the trial court if it finds an abuse of discretion. Where there is an abuse of the trial court's discretion, the scope of review is limited to lowering excessive awards to the highest amount the trial court could have reasonably awarded or raising inadequate awards to the lowest amount the trial court could have reasonably awarded. Bitoun v. Landry, 302 So.2d 278 (La.1974); Coco v. Winston Industries, Inc., 341 So.2d 332 (La. 1976). A lump sum judgment of damages is presumed to award all items of damage claimed, and the appellant's burden of proving that the trial court abused its discretion is more difficult than usual because the intention to award a specific amount for any particular item is not readily ascertainable. Taylor v. Dupree, 484 So.2d 986 (La.App. 3d Cir.), writ denied, 488 So.2d 201 (La.1986).
In the instant case the jury awarded Mr. and Mrs. Prince $100,000.00 in survival damages and $400,000.00 apiece for the wrongful death of this son. Pursuant to the statutory cap set out in LSA-R.S. 40:1299.42, the trial judge lowered the judgment to $500,000.00. The judgment was in the form of a lump sum which did not distinguish between the amount awarded for survival damages and the amount awarded for wrongful death. Consequently, we must consider all items of damage together.
The survival action in a suit resulting from the death of a tort victim includes recovery for pain and suffering, loss of earnings and other damages sustained by the victim up to the moment of death. Pierre v. Lallie Kemp Charity Hospital, 515 So.2d 614 (La.App. 1st Cir.), writ denied, 515 So.2d 1111 (La.1987). Damages for pain and suffering are properly awarded if there is a scintilla of evidence of any suffering or pain on the part of the deceased by his actions or otherwise. Temple v. Liberty Mutual Insurance Co., 330 So.2d 891 (La.1976); Cupstid v. Harrison Hardwood MFG. Co., 552 So.2d 1223 (La.App. 3d Cir.1989), writ denied, 558 So.2d 572 (La.1990). Elements of damage for wrongful death are: loss of love, affection and companionship, loss of support, medical expenses and funeral expenses. Roundtree v. Technical Welding and Fabrication Co., Inc., 364 So.2d 1325 (La. App. 4th Cir.1978), writ denied, 367 So.2d 389 (La.1979).
Dr. Charolette Cedatol, who examined the decedent on the morning of October 15th, testified by deposition as to the pain and suffering experienced by the decedent. She noted that the medical records indicate that Cole's first seizure came at about 9:15 p.m. on the 14th. She also pointed out that nurses' notes indicate that Cole was awake after this seizure and was whining and crying. The second and more severe seizure came at about 11:45 p.m. The medical records detail that during this seizure, Cole's back was arching, his teeth were clenched, his limbs were jerking and his eyes were rolling to the side. Dr. Cedotal testified that after 11:45 p.m., Cole was in and out of consciousness. She also testified that at the time he was admitted to LSU, at 4:00 a.m. on the 15th, he was comatose and unresponsive to pain.
Dr. Cedotal opined that Cole probably experienced pain after his first seizure and possibly experienced some pain after his *544 second seizure. Dr. Cedotal explained that seizure victims go into what she labeled as a post ictal state following the seizure activity. She stated that during the post ictal state the brain is recuperating and patients are often frightened and anxious, as if they had just awaken from a nightmare. She also observed that the patients also experience muscle spasms and severe headaches in this state. Dr. Cedotal said that patients have described the headaches as being like "explosions in their heads." Dr. Cedotal stated that, in her opinion, Cole did not experience any pain after 4:40 a.m. on the 15th.
The entire Prince family testified at the trial of this matter. Diane A. Prince stated that Cole was very special and represented a "light at the end of the tunnel" for them. She explained that shortly before Cole was born, Ronald lost his job, and that the couple decided to focus their energy and attention away from their financial troubles and on to their new child. She stated that they were determined that Cole overcome his handicap and they invested a great deal of time and effort into that goal. After Cole's death, Diane became withdrawn, and lost interest in the remaining children. She became short-tempered and moody and eventually quit her job and quit teaching catechism. She testified that she is still troubled by the event and that their lives have not been normal since.
Ronald Prince testified that he became unusually close to Cole during the period of time he was laid off from work. He stated that Cole received some special treatment, which included being allowed to sit on his father's lap during meals and to routinely stay up past his bedtime. Mr. Prince stated that he and his wife have become overpossessive and overprotective of their remaining children as a result of Cole's death. He also told the court that he no longer has any faith in the medical profession.
Although the award is on the high side, after a careful review of the record, we cannot say that the trial court abused its discretion in awarding $500,000.00 in damages to the plaintiffs. The testimony at trial convinces this court that Cole was an extraordinary child who had an extremely close and loving relationship with his family. The deposition testimony of Dr. Cedotol establishes that Cole suffered pain after the occurrence of the seizures. We, therefore, uphold the trial court's award.

DECREE
We affirm the judgment of the trial court. Defendants are cast for all costs.
AFFIRMED.