631 So.2d 651 (1994)
Carolyn S. TERRO, et vir., Plaintiffs-Appellants-Appellees,
v.
CASUALTY RECIPROCAL EXCHANGE, et al., Defendants-Appellees-Appellants.
No. 93-593.
Court of Appeal of Louisiana, Third Circuit.
February 2, 1994.
*652 Benjamin Wakefield Mount and Thomas John Gayle, Lake Charles, for Carolyn S. Terro, etc.
Frank M. Walker Jr., Lake Charles, for Cas. Reciprocal Exchange, et al.
Before DOUCET and KNOLL, JJ., and CULPEPPER[*], J. Pro Tem.
KNOLL, Judge.
This personal injury case involves a claim for damages which resulted when a truck made a left-hand turn and collided with an oncoming automobile before the turning vehicle cleared the opposing lane of traffic. The left turning vehicle was owned by Maintenance Enterprise, Inc. (MEI) and was driven by its employee, Michael Shortridge. The oncoming automobile was driven by Carolyn S. Terro (Mrs. Terro).
The jury found Shortridge, his employer, MEI, and their insurer, Casualty Reciprocal Exchange, Inc. (Casualty Reciprocal), 75% at fault and Mrs. Terro 25% at fault. The jury further made a quantum award to Mrs. Terro, totaling $199,800 and which was itemized as follows: for past pain and suffering, $25,000; for future pain and suffering, $25,000; for permanent scarring and disfigurement, $10,000; for permanent disability, $50,000; for loss of future earnings, $29,100; for medical expenses, $19,100; for future medical expenses, $12,500; and, for loss of wages as of the time of trial, $29,100. The jury denied the consortium claim of Mrs. Terro's husband, Danny Terro.
The Terros moved for JNOV on the jury's apportionment of fault and its quantum award. The trial court granted the motion for JNOV on the issue of the apportionment of fault and removed the jury's assessment of 25% fault to Mrs. Terro. The trial court denied the Terros' motion for JNOV on the issue of quantum.
The Terros appeal contending that the jury's assessment of quantum was abusively low. In their answer to the appeal, Casualty Reciprocal, MEI, and Shortridge contend that the trial court erred in its determination that Mrs. Terro was free from fault.

*653 FACTS
Mrs. Terro, thirty-three years of age, was employed as an oral surgeon's assistant. On October 25, 1990, she left work just before noon and was traveling eastbound on U.S. Highway 90 en route to her mother's home to pick up her four year old son. As Mrs. Terro approached a convenience store situated on the south side of the highway, Shortridge was proceeding westbound in a MEI pickup truck. In the vicinity of the convenience store, Shortridge signaled and suddenly made a left turn in front of Mrs. Terro's automobile. Mrs. Terro braked and veered toward the shoulder of the roadway in an attempt to avoid the accident; however, despite Mrs. Terro's evasive maneuver, the vehicles collided.
Mrs. Terro had multiple injuries, including a broken arm and right ankle, which required surgery and hospitalization. These injuries will be further detailed in the opinion in our discussion of quantum. As of the time of trial, Mrs. Terro had not returned to work and additional ankle surgery was being considered because of severe pain and arthritis associated with the ankle injury.

JNOV, STANDARD OF REVIEW
The procedural article which controls the trial court's use of JNOV is LSA-C.C.P. Art. 1811. Although the article does not specify the grounds on which a trial judge may grant a JNOV, the Louisiana Supreme Court restated the criteria for determining when a JNOV is properly granted in Anderson v. New Orleans Public Service, 583 So.2d 829 (La.1991), and further detailed the duty of an appellate court in reviewing the trial court's action on the motion for JNOV. The Louisiana Supreme Court stated at page 832:
"A JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. If there is evidence opposed to the motion which is of such quality and weight that reasonable and fairminded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied. Scott [v. Hospital Service District No. 1, 496 So.2d 270], supra. In making this determination, the court should not evaluate the credibility of the witnesses, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party.
In reviewing a JNOV, the appellate court must first determine if the trial court erred in granting the JNOV. This is done by using the aforementioned criteria just as the trial judge does in deciding whether to grant the motion or not, i.e., do the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict? If the answer to that question is in the affirmative, then the trial judge was correct in granting the motion. If, however, reasonable men in the exercise of impartial judgment might reach a different conclusion, then it was error to grant the motion and the jury verdict should be reinstated."
In our review of the trial court's decision on the motion for JNOV, it is our duty to determine whether the trial court's findings were manifestly erroneous. Silliker v. St. Landry Police Jury, 520 So.2d 880 (La.App. 3rd Cir. 1987).

JNOV, APPORTIONMENT OF FAULT
Casualty Reciprocal, MEI, and Shortridge contend that the trial court erred in granting the Terros' motion for JNOV on the issue of apportionment of fault.
A left-turning motorist involved in a collision that occurs across the center line is burdened with the presumption that he is at fault, and must offer evidence to show that he is free from negligence to avoid the imposition of liability. Miller v. Leonard, 588 So.2d 79 (La.1991). Likewise, the jurisprudence has established that an oncoming driver has a right to assume that the left-turning motorist will obey the laws in allowing him to *654 continue in their proper lane of travel and will yield to his right-of-way. Jones v. Lingenfelder, 537 So.2d 1275 (La.App. 2nd Cir. 1989), writ denied, 539 So.2d 631 (La.1989). Against this backdrop, although Casualty Reciprocal, MEI, and Shortridge do not contest the determination that Shortridge was at fault, they argue that there was evidence of Mrs. Terro's excessive speed and inattentiveness on which the jury could have based its finding that she was 25% fault.
Under Louisiana's comparative fault system, a plaintiff's recovery is reduced by the degree or percentage of fault attributed to her by the trier of fact. LSA-C.C. Art. 2323. In the apportionment of fault, the trier of fact must consider both the nature of the conduct of each party at fault and the extent of the causal connection between the conduct and damages. A party who relies upon a comparative fault defense bears the burden of proving by a preponderance of the evidence that such negligence was a cause in fact of the accident. Rossitto v. Jinks, 576 So.2d 1115 (La.App. 3rd Cir.1991). Proof by direct or circumstantial evidence is sufficient to constitute a preponderance when the entirety of the evidence establishes the fact or causation sought to be proved is more probable than not. Miller, supra.
Shortridge's deposition was submitted to the jury instead of his live testimony since he was an out-of-state resident at the time of trial. He testified that just before the accident he was looking through his rear view mirror to check traffic behind him. He stated that during his turning maneuver, as he was looking into the rear view mirror, just before the accident, his brother shouted to him to "Watch it" as Mrs. Terro's vehicle approached.
Mrs. Terro's testimony was that she was traveling within the 55 m.p.h. speed limit. To the contrary, the defendants contend that the amount of damage to the two vehicles as a result of the collision was sufficient to rebut Mrs. Terro's testimony about her speed. After carefully reviewing the record, we find that the defendants' reliance on the amount of damage to the vehicles was not borne out by the evidence. Defendants presented no evidence which would have established that the amount of damage was inconsistent with a collision of this nature if Mrs. Terro was proceeding at 55 m.p.h. Accordingly, we find no evidence which would have preponderated that Mrs. Terro was speeding.
In a similar vein, we find no error in the trial judge's assessment of the motion for JNOV on the issue of the defendants' contention that Mrs. Terro's inattentiveness caused the accident. Mrs. Terro testified that she saw Shortridge's vehicle less than a car length away as he made his turn in front of her. The investigating state trooper, Officer Tim Lafleur, opined that Mrs. Terro could have done nothing else to avoid the accident. Contrary to the defendants' assertion, the photographs show that Mrs. Terro left skid marks just prior to the collision as she attempted to avoid the accident.
Accordingly, we find, as did the trial court, that the facts and inferences point so strongly and overwhelmingly in favor of the Terros, that reasonable jurors could not have found Mrs. Terro at fault in any way. As succinctly stated by the trial court in its oral reasons for granting the JNOV on the issue of liability:
"This is a very straightforward left-turn case where the left turner just turned. The driver was looking to the rear at the time when he should have been looking elsewhere. His passenger was attentive. There was just no reason for this driver to do what he did; whereas, I can find no fault, whatever, on her [Mrs. Terro's] part. She has a vehicle, she's in her lane of travel, she's permitted to use it, she's permitted the assumption, and there is just no evidence sufficient for me to ... apportion any negligence whatever to Ms. Terro."
Therefore, given the record before us, we cannot find that the trial judge was manifestly erroneous in granting the Terros' motion for JNOV on the issue of liability. See also, Neal v. Highlands Ins. Co., 610 So.2d 177 (La.App. 3 Cir.1992), writ denied, 612 So.2d 100 (La.1993).

MANIFEST ERROR, QUANTUM
The Terros contend on appeal that the jury abused its discretion in making an unreasonably *655 low damage award for past and future pain and suffering and loss of future earnings, and in denying Mr. Terro's loss of consortium claim.
Generally speaking, when an appellate court reviews the jury's quantum award it must be determined whether the jury's factual findings on plaintiff's damages represented an abuse of its much discretion. Guillory v. Avondale Shipyards, Inc., 448 So.2d 1281 (La.1984).
Pain and suffering, past and future. The jury awarded Mrs. Terro $25,000 for past pain and suffering and $25,000 for future pain and suffering. Mrs. Terro suggests in brief that the awards for past and future pain and suffering are abusively low and should each be raised to at least $50,000. We agree.
In the accident, Mrs. Terro, who suffered from diabetes prior to the collision, suffered a broken right arm, and the other arm was severely bruised. She also suffered a punctured lung, a fractured rib, and a severe break to her right ankle as a result of the accident.
Dr. Nathan Cohen, Mrs. Terro's orthopedic surgeon, described her ankle injury as a complex fracture with many fracture lines extending through the ankle. Because this fracture involved a major weight bearing joint, Dr. Cohen characterized the fracture as significant. Despite the severity of the injury, Mrs. Terro's surgery to repair the ankle was postponed for four days because of her punctured lung and the severe swelling of the joint. When Dr. Cohen performed the surgery, he obtained a small amount of donor bone from Mrs. Terro's hip which he used to repair the ankle fracture. He also fixated the bones with various pieces of hardware, including wire, screws and a metal plate; the hardware was never removed. Mrs. Terro remained in the hospital for approximately two weeks.
Mrs. Terro testified that she began physical therapy the day following surgery. She stated quite vividly that the pain in the area of the ankle was pulsating and that she wanted to scream because of the intensity of the pain as her foot contacted the floor.
Mrs. Terro stated that she was required to use a walker for about five months. Additionally, the record shows that Mrs. Terro's right arm remained in a cast for seven and one-half weeks and her right leg was in a cast for nine weeks.
Because of her problems with getting around, Mrs. Terro remained at home for approximately two months, staying most of the time on the couch with her ankle elevated. After using a walker for five months, Mrs. Terro began using a "DonJoy Boot", a large boot built with an adjustable hinge pin which allowed her ankle to remain at different angles as her healing progressed. At the time of trial, Mrs. Terro was still experiencing pain at the ankle fracture, and was wearing a supportive ankle brace.
The record shows that Mrs. Terro regularly saw Dr. Cohen from the time of the accident until July of 1991. After Dr. Cohen released her in August of 1991, he saw her again on January 14, 1992, and September 9, 1992, for continued complaints of pain in the ankle.
As a result of the broken ankle, Mrs. Terro was still in pain at the time of trial and described the ankle as always looking bruised. She also continued to encounter swelling in the area of the ankle and had developed degenerative arthritis in the ankle joint. She testified that her ankle throbs every morning when she gets out of bed and is sensitive to touch. Furthermore, she stated that upon rising in the morning, she is unable to place her full weight on her foot for approximately one and one-half hours. Mrs. Terro testified that standing in excess of 45 minutes exacerbates the ankle pain, and that she has significantly more pain when she returns to her feet after prolonged periods of sitting. As a result of this persistent pain, much of the testimony in this area centered on whether the degree of pain Mrs. Terro suffered would necessitate a second surgery to fuse the bones in the ankle.
Dr. Cohen stated that since Mrs. Terro's ankle pain has continually increased, fusion surgery would be the only option available to alleviate her pain. He further opined that normally the chances for a successful fusion *656 were 95%, but because of Mrs. Terro's preexisting diabetes, the success rate would probably be 85%.
The defendants, in an attempt to diminish Mrs. Terro's complaints of pain, suggest that she overstated the amount of prescriptive pain medication. Mrs. Terro candidly admitted that she limited her use of prescriptive pain medication because they made her sleepy, and she did not feel safe when caring for her young son after taking the medicine. Instead, she stated that she took over-thecounter pain relievers as much as possible and resorted to the prescriptive pain medication only when nothing else eased the pain. When we view the totality of her testimony, although she may have overstated her monthly drug bill, it can not be gainsaid that she was in pain and that the pain had progressively worsened since the accident.
Likewise, we have carefully reviewed each of defendants' other assertions that Mrs. Terro puffed her testimony in an attempt to increase her damage claim. In light of the strong medical evidence and the unrefuted objective testimony regarding Mrs. Terro's ankle injury, we find that these assertions do not rise to the level that would denigrate from her forthright statements regarding her injuries and the pain that has progressively worsened as a result of those injuries.
Based on the totality of evidence presented to the jury on pain and suffering, past and future, we find that the jury's award of $25,000 for each of these elements of damage constituted a clear abuse of discretion. On the basis of the record before us, we find that the lowest amount the jury could have awarded for pain and suffering, past and future, was the sum of $50,000 for each. Accordingly, we will amend the jury verdict to award Mrs. Terro $50,000 for past pain and suffering and an additional $50,000 for her future pain and suffering.
Loss of future earnings. Mrs. Terro next contends that the jury's award of $29,100 for future loss of earnings constituted an abuse of discretion. She argues that the lowest amount which the jury could have awarded was $98,081. This was the amount Dr. G. Randolph Rice, Mrs. Terro's expert economist, calculated as her loss of future earnings if she would be limited to no more than minimum wage jobs.
In Veazey v. State Farm Mut. Auto Ins., 587 So.2d 5, 7 (La.App. 3rd Cir.1991), we stated:
"In Louisiana tort cases, the plaintiff must prove by a preponderance of the evidence the damages caused by the tortfeasor's fault. Proof is sufficient to constitute a preponderance when it shows that the fact sought to be proved is more probable than not.
A claim for loss of earnings need not be proven with mathematical certainty, but only such proof as reasonably establishes plaintiff's claim. This may consist only of plaintiff's testimony if considered credible by the trier of fact.
Earning capacity itself is not necessarily determined by actual loss; damages may be assessed for the deprivation of what the injured plaintiff could have earned despite the fact that he may never have seen fit to take advantage of that capacity. The theory is that the injury done him has deprived him of a capacity he would have been entitled to enjoy even though he never profited from it monetarily.
Before an appellate court can disturb a quantum award, the record must clearly reveal that the trier of fact abused its discretion in making the award. An award made by the trial court may not be modified unless it is unsupported by the record. The appellate question is not whether a different award may have been more appropriate, but whether the trial court's award can be reasonably supported by the record." (Citations omitted.)
From the outset, we observe that although Dr. Rice also presented wage loss projections based on the possibility that Mrs. Terro would never be able to return to gainful employment, her brief frames the question of future loss of wages in terms of what her loss would be if she was only able to perform minimum wage work. Accordingly, we will assess the jury verdict in this light.
At the time of her injury, Mrs. Terro was 33 years of age and was employed as a dental *657 surgeon's assistant at a monthly wage of $1,280. Her work required her to stand for long periods of time.
Dr. Cohen testified that Mrs. Terro was totally disabled as of June 12, 1992, because of her ankle fracture. He further stated that even if she successfully underwent the fusion surgery, she would still have a 50% disability to her lower extremity. He further opined that there was only a possibility that Mrs. Terro could return to her former occupation since her employment required long periods in which she had to stand. Dr. Cohen stated it was more probable that she will only be able to perform sedentary work.
Dr. Rice testified that but for the injuries she received in this accident, Mrs. Terro had a work life expectancy of 28.37 years. On the basis of Mrs. Terro returning to sedentary work, after comparing her pre-injury salary to those jobs in which she would only earn a minimum wage, Dr. Rice opined that Mrs. Terro suffered a loss of future earnings of $98,081.
Dr. W. Richard Hargrove, a certified vocational evaluator, testified on behalf of Mrs. Terro. After interviewing her and conducting various tests, he concluded that if she were able to return to sedentary type work, she would experience an 80% loss of earning capacity. He further projected a 40% loss of earning capacity if Mrs. Terro had a successful ankle fusion and was able to return to light duty work.
On the other hand, Allen Simmons, a vocational rehabilitation consultant, employed by the defendants, interviewed and tested Mrs. Terro. He opined that based on a successful ankle fusion, Mrs. Terro could be retrained within two years and would be able to earn a salary equal to that she made as a dental surgeon's assistant.
After carefully reviewing the evidence regarding Mrs. Terro's future loss of wages, it is clear that even with a successful ankle fusion, she will have a 50% disability to her lower extremity and will have an 80% loss of earning capacity, at worse, and at least a 40% loss of earning capacity, at best. When viewed in light of Dr. Cohen's opinion that after a successful ankle fusion, it was most probable that Mrs. Terro could only perform sedentary work in the future, we find that the jury was clearly wrong in awarding future loss of wages of only $29,100, an amount only equal to the actual wages she lost between the accident and the trial. Rather, we find that the lowest amount of future loss of wages supported by the evidence is $98,081, and will amend the judgment accordingly.
Loss of consortium. Lastly, Mr. Terro contends that the jury was clearly wrong in its determination that he was not entitled to an award for loss of consortium.
The compensable elements in a loss of consortium claim are loss of society, sex, service, and support. LSA-C.C. Art. 2315(B); Vidrine v. Government Employees Insurance Co., 528 So.2d 765 (La.App. 3rd Cir.1988), writ denied, 532 So.2d 156 (La. 1988). Elaborating on these elements of damages, we stated in Girard v. Price, 606 So.2d 990, 995 (La.App. 3rd Cir.1992):
"`Society' is broader than loss of sexual relations. It includes general love, companionship, and affection that the spouse looses as a result of the injury. `Support' is the loss of family income that would go to support the uninjured spouse. `Service' is the uncompensated work around the house or educational help with the children which presumably will, as a result of the injury, have to be obtained for another source and at a price."
The record shows that since the accident, the Terros activities have been curtailed. They can no longer enjoy joint participation in such things as gardening, fishing, hunting, and the like. They are also unable to work together doing wood working and wallpapering like they did prior to the accident. In addition, Mrs. Terro's mother had to assume part of the household chores and helped Mr. Terro take care of their young son. Even though Mrs. Terro can now do some of the household work and chores, her cleaning time has doubled because of her injuries, and Mr. Terro has had to assume more of the duties of raising their young son. As a result, the evidence bears out that the Terros' lifestyle has been altered and Mr. Terro now has to take charge of more family obligations.
*658 Based on this evidence, we find the defendants' reliance on Rossitto, supra, misplaced. Unlike the Rossittos, the record shows that the Terros' activities have been affected to a significant degree. Accordingly, we find that the jury abused its discretion in failing to make an award for Mr. Terro's loss of consortium. Therefore, we find that an award of $10,000 for loss of consortium is justified by the evidence.
For the foregoing reasons, the judgment of the trial court is affirmed in part, and reversed in part to award $10,000 to Danny Terro for his loss of consortium, and amended to increase the awards to Mrs. Terro for past and future pain and suffering to $50,000 each and to award an additional sum of $68,981 to Mrs. Terro for her future loss of wages. The costs of this appeal are assessed to the defendants.
AFFIRMED IN PART, REVERSED IN PART, AMENDED IN PART, AND RENDERED.
NOTES
[*] Judge William A. Culpepper, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.