814 So.2d 729 (2002)
Michael William McGRAIL, individually, and Raymond Winters, as the tutor of James Phillip McGrail and Sandra Marie McGrail, individually and as the surviving children of Margaret Alexandria Winters, Plaintiff-Appellant,
v.
Jessie R. LEE, Mitchell Transportation Services, Inc. and Clarendon National Insurance Company, In Solido, Defendant-Appellant.
No. 35,756-CA.
Court of Appeal of Louisiana, Second Circuit.
April 3, 2002.
Rehearing Denied May 2, 2002.
*731 William F. Kendig, Shreveport, for Plaintiff-Appellant.
James A. Mijalis, Shreveport, for Defendant-Appellant.
Before WILLIAMS, STEWART and GASKINS, JJ.
WILLIAMS, Judge.
The plaintiffs, Michael McGrail, James McGrail and Sandra McGrail, children of the decedent Margaret Winters, and the defendants, Jessie Lee, Mitchell Transportation Services, Inc., Clarendon National Insurance Company and RLI Insurance Company, appeal a judgment allocating 80% fault to Lee and 20% to decedent in causing the accident. The jury awarded plaintiffs $50,000 for the decedent's pain and suffering and awarded $750,000 to each child for the wrongful death of their mother. The court rendered judgment in accordance with the jury verdict, subject to reduction for decedent's fault and a statutory penalty because decedent did not have auto insurance coverage. For the following reasons, we affirm.

FACTS
On October 26, 1999, at approximately 4:15 p.m., an auto accident occurred at the intersection of Shreveport Blanchard Road and I-220 in Shreveport. Margaret Winters ("Winters") was driving her 1994 Subaru northbound on Shreveport-Blanchard while Jessie Lee was driving his employer's trailer truck southbound. As Winters approached the intersection, Lee began turning his truck left onto I-220 in front of her. Winters applied her brakes and the vehicle skidded to the right shoulder of the road, where the truck struck the left front side of her automobile. As a result of the collision, Winters was seriously injured and was transported to LSU Medical Center. Winters never regained consciousness and died several days later as a result of her injuries.
The plaintiffs, Michael McGrail, James McGrail and Ray Winters, as tutor of Sandra McGrail, filed a petition for damages against the defendants, Jessie Lee, his employer, Mitchell Transportation Services, Inc., its insurer, Clarendon National *732 Insurance Company and the excess coverage insurer, RLI Insurance Company. Plaintiffs sought medical and funeral expenses and damages for their mother's pre-death pain and suffering and wrongful death. Defendants asserted that pursuant to LSA-R.S. 32:866, the "no pay-no play" statute, the first $10,000 of any damage award could not be recovered by plaintiffs because decedent did not have insurance coverage at the time of the accident.
After a trial, the jury allocated 80% fault to Lee and 20% fault to decedent in causing the accident. The jury awarded plaintiffs $24,653 for the stipulated medical and funeral expenses, $50,000 for decedent's pain and suffering and $750,000 each to Michael, James and Sandra McGrail in general damages. The trial court rendered judgment reducing the award for expenses and pain and suffering to $49,722.86, reflecting the decedent's 20% fault and the statutory penalty for non-insurance. The court awarded $600,000 to each of the children to reflect the comparative fault reduction.
Plaintiffs filed a motion for judgment notwithstanding the verdict (JNOV) on the issue of comparative fault. Defendants filed a motion for JNOV on the issue of damages, for new trial and alternatively, for remittitur. The trial court denied the motions. The plaintiffs and defendants appeal the judgment.

DISCUSSION
The plaintiffs and defendants contend the jury erred in its allocation of fault. Defendants argue that decedent should have been assessed with a higher percentage of fault because of evidence that she was intoxicated at the time of the accident. Plaintiffs argue that although decedent had been drinking earlier in the day, she should not have been assessed with any fault because she took all reasonable steps to avoid the accident and the left-turning driver is presumed negligent.
Before attempting a left turn, a motorist should ascertain whether it can be completed safely. Theriot v. Lasseigne, 93-2661 (La.07/05/94), 640 So.2d 1305; Silva v. Calk, 30,085 (La.App.2d Cir.12/10/97), 708 So.2d 418. In a vehicular collision case, plaintiffs are afforded the benefit of a presumption of the defendant's negligence when they prove that the defendant executed a left hand turn and crossed the center line at the time of the impact. Miller v. Leonard, 588 So.2d 79 (La.1991). The burden rests on the motorist who desires to make a left turn to explain how the accident occurred and to show that he is free from negligence. Id.; Silva, supra.
Likewise, jurisprudence has established that an oncoming driver has a right to assume that the left-turning motorist will obey the law in allowing him to continue in his proper lane of travel and will yield to his right-of-way. Jones v. Lingenfelder, 537 So.2d 1275 (La.App. 2d Cir. 1989), writ denied, 539 So.2d 631 (La. 1989); Terro v. Casualty Reciprocal Exchange, 93-593 (La.App. 3rd Cir.02/02/94), 631 So.2d 651, writ denied, 94-0522 (La.04/22/94), 637 So.2d 157.
Nonetheless, all motorists on Louisiana highways must drive with due regard for the traffic on the highway and have an affirmative duty not to drive faster than is reasonable and prudent under the conditions and potential hazards existing at the time. LSA-R.S. 32:64(A); Lennard v. State Farm Mutual Automobile Insurance Company, 26,396 (La.App.2d Cir.01/25/95), 649 So.2d 1114; Jones, supra. Thus, notwithstanding the presumption of negligence attributed to a left-turning driver, a favored motorist can still be assessed with comparative fault if his substandard *733 conduct contributed to the cause of the accident. Terro, supra.
Pursuant to Watson v. State Farm Fire & Casualty Ins. Co., 469 So.2d 967 (La.1985), the trier of fact will compare the relative fault of the parties in the assessment of liability. The law of comparative negligence is applicable to situations involving automobile accidents. Ortigo v. Merritt, 488 So.2d 1051 (La.App. 2d Cir.1986). The allocation of fault is a factual determination subject to the manifest error rule. Hundley v. Harper Truck Line, Inc., 28,613 (La.App.2d Cir.9/25/96), 681 So.2d 46.
A court of appeal should not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. Stobart v. State Dept. of Transp. & Development, 617 So.2d 880 (La.1993). The task of a reviewing court is to assess whether the fact finder's resolution of conflicting evidence was reasonable in light of the record as a whole. Fowler v. Wal-Mart Stores, Inc., 30,843 (La.App.2d Cir.8/19/98), 716 So.2d 511.
James Lock, accepted as an expert in accident reconstruction, testified that he examined the accident scene, made measurements and prepared the diagrams admitted into evidence. Lock stated that decedent's vehicle left approximately 36 feet of skid marks and that when a driver presses the brake, there is a lag time before the brakes engage. Lock calculated that braking began 14 feet before the start of the skid marks, so that decedent applied the brakes 50 feet before impact at a speed of approximately 45 mph. At this speed, Lock estimated that the brakes must engage for 90 feet in order for the vehicle to come to a complete stop. Lock stated he was unable to determine the speed of decedent's vehicle before the skidding began because there was no physical evidence of speed prior to that point.
Lock testified that another factor in the accident was the driver's perception-reaction time, a term which refers to the act of observing a thing in the field of vision and the person's response thereto. Lock stated that a distracted or inattentive driver would have a longer response time than a focused driver. Lock opined that if the decedent had begun skidding six-tenths of a second, or 40 feet, earlier there would not have been an impact.
Jimmy Barnhill, assistant director of the North Louisiana Crime Lab, was accepted as an expert in forensic toxicology. Barnhill testified that approximately one hour after the accident, decedent's blood alcohol level was .087g% in a sample taken at the hospital. Barnhill stated that a person's alcohol elimination rate is that at which alcohol is metabolized by the liver. Barnhill testified that individuals eliminate alcohol from their bodies at varying rates in a range of .015g% to .025g% per hour. Barnhill explained that he used a retrograde extrapolation method to estimate decedent's blood alcohol level at the time of the accident. Applying the range of alcohol elimination rates to decedent's known blood alcohol level, Barnhill calculated that decedent's blood alcohol level was between.10g% and .108g% when the accident occurred. However, on cross examination, Barnhill agreed that if his calculations were done without rounding off the numbers, the decedent's blood alcohol level at the hospital was .0868g% and that retrograde extrapolation at the lower elimination rate would result in a blood alcohol level of .0995g%, slightly below the legal limit for intoxication.
Barnhill testified that a person's reaction time slows with higher levels of alcohol in the body and that a person with an elevated blood alcohol content is more easily confused when trying to do more than *734 one task at a time. Barnhill opined that with the level of alcohol in her body, the decedent's perception reaction time was more probably than not impaired so that she would have taken longer to move her foot from the gas pedal to the brake. Barnhill concluded that at the time of the accident, more probably than not the decedent was impaired due to alcohol and was unable to drive safely.
Steven Miller, a co-employee of Lee at Mitchell, testified that he was driving a trailer truck ahead of Lee prior to the accident. Miller stated that when he was making his left turn, he observed decedent's vehicle driving behind another automobile. Miller estimated that decedent's vehicle was traveling at approximately 65 mph, a speed exceeding the posted limit. He did not see the accident happen, but was told by Lee over the CB radio that an impact was imminent.
Jessie Lee testified that when he stopped in the left turn lane, he could see two vehicles approaching the I-220 onramp. Lee stated that the vehicles were traveling close to each other, that the first vehicle was signaling to turn right onto the exit and that he assumed the decedent's following vehicle would also turn. Lee testified that as he started to make a left turn, the decedent's vehicle veered around the exiting auto, passed into the left lane and then back into the right-hand lane. Lee stated that at this point, he thought an accident was unavoidable and he applied his brakes before the impact, but that his truck was moving too slowly to leave any skid marks. Lee acknowledged that the oncoming traffic had the right-of-way and that he had wrongly assumed that decedent's vehicle would turn right when he proceeded into the intersection.
The evidence shows that the truck's front bumper struck the left front side of decedent's vehicle and that Lee apparently did not take any evasive action despite his awareness that a collision was imminent. Citing Holt v. Cannon Express Corp., 31,271 (La.App.2d Cir.12/11/98), 722 So.2d 433, the plaintiffs contend the highest degree of fault reasonably attributable to decedent is ten percent. However, unlike the situation in Holt, the present case involves evidence that decedent had been drinking prior to the accident. One of decedent's sons testified that he had observed his mother drinking beer on the morning of the accident and alcohol was found in her blood sample at the hospital.
Applying the factors of Watson, we note that Lee acted with an awareness of the danger in turning left across oncoming traffic with a trailer truck and that decedent was aware of the risk of driving after drinking. The conduct of both Lee and decedent created a significant risk of accident and injury. Contrary to defendants' assertion in their brief, the jury could have found that Lee was in a superior position to avoid the accident since he was stopped with a view of approaching traffic and was under a duty not to proceed before ascertaining whether the left turn could be made safely.
The jury heard the evidence and weighed the credibility of the witnesses. Considering the evidence presented, the jury could reasonably have concluded that the alcohol in decedent's system was below the .10g% legal level of intoxication, but that nevertheless, her perception-response ability was impaired so that her condition was a cause of the accident. The jury was able to evaluate the reciprocal duties of each motorist and the competing theories regarding their respective fault. After reviewing the entire record, we cannot say the jury's allocation of fault was manifestly erroneous. Therefore, we will not disturb the result. The assignments of error lack merit.

*735 Motion in Limine

The defendants contend the trial court erred in denying the motion in limine to prevent the plaintiffs from stating to the jury the effect of LSA-R.S. 9:2798.4, which provides that a plaintiff may not recover damages if the jury finds that the person was more than 25% at fault as a result of a blood alcohol level of .10g% or above. Defendants argue that their rights were prejudiced by the court's ruling, which improperly allowed counsel to inform the jury about the consequences of its potential fault finding.
After presentation of all the evidence and arguments at trial, the court shall instruct the jurors on the law applicable to the cause submitted to them. LSA-C.C.P. art. 1792. The trial court is required to instruct the jury on the law which pertains to the evidence adduced. Burks v. McKean, 559 So.2d 921 (La.App. 2d Cir.1990).
In the present case, defendants sought to have the jury determine whether decedent's blood alcohol level was .10g% at the time of the accident, a finding which is a factor in triggering Section 2798.4. However, defendants filed a motion to preclude plaintiffs from informing the jury that they would not recover damages if the jury made the requisite factual findings under the statute.
At the motion hearing, the trial court stated that if the jury was going to decide whether the threshold level had been reached, the jurors should be told why that determination was necessary. Otherwise, the court believed the situation would be unfair to jurors and awkward for counsel if evidence was presented on the factual issue, but the reason such a finding was required was not explained. The trial judge offered the parties an alternative of submitting the factual issue to the court to decide after the close of evidence. Opposing counsel chose to briefly mention the implications of the statute in their opening statements and closing arguments to the jury.
Based upon this record, the defendants have not shown that their rights were prejudiced by an inability of the jury to render a just verdict. Consequently, we cannot say the trial court erred in denying the motion in limine on this issue. The assignment of error lacks merit.

Damages
The defendants contend the jury erred in awarding plaintiffs $750,000 each in wrongful death damages. Defendants argue that based on the evidence, the awards are excessive and should be significantly reduced.
The trier of fact is given much discretion in the assessment of damages. LSA-C.C. art. 2324.1. The elements of damage for a wrongful death action are loss of love, affection, companionship and support. Scott v. Pyles, 99-1775 (La.App. 1st Cir.10/25/00), 770 So.2d 492. Wrongful death awards may be based on the degree of affection with the deceased, the amount of guidance needed by the minor and the closeness of the family relationship. Williams v. City of Monroe, 27,065 (La. App.2d Cir.7/3/95), 658 So.2d 820.
An appellate court may disturb an award of damages only when the record clearly shows that the factfinder abused its broad discretion in making the award. Scott, supra. After a determination that an award constitutes an abuse of discretion based on the particular injuries sustained and their effect on the particular injured person, the appellate court may reduce or increase the award to the highest or lowest amount reasonably within the factfinder's discretion. Wilson v. Nat'l Union Fire Ins. Co., 27,702 (La.App.2d Cir.12/6/95), 665 So.2d 1252.
*736 In the present case, the maternal grandmother, Rene Winters, testified that decedent was very close to her children. Mrs. Winters stated that Michael was having a hard time dealing with his mother's death and was still troubled about signing the authorization to remove life support. Mrs. Winters testified that decedent's death was very hard on James, but that he was now living with her and her husband and was doing better.
Sandra McGrail was nine years old when her mother died. Sandra testified that she misses her mother and was still having some trouble getting to sleep at night.
James McGrail, age 18, testified that his mother was always willing to help him with problems and was there to listen. James stated that he stopped attending school and moved out of his mother's house when he was 16 years old. He was away for approximately three and one-half months, then moved back when his mother asked him to return home. The accident occurred less than two weeks later. James testified that on the morning of the accident, he had observed his mother drinking a beer and had previously seen her smoke marijuana. James stated that he was living with his grandparents and was a freshman in high school.
Michael McGrail, age 21, testified that he was married with a one-year old son, working full-time and attending college. Michael testified that he and his wife lived with decedent for the first several months of their marriage, until she moved to an apartment. Michael stated that his mother offered to babysit his son while he and his wife were working. Michael saw his mother each work day when he dropped off his child and picked him up in the evening. Michael testified that after the accident, he was told at the hospital that his mother had been resuscitated but had not regained consciousness. Michael stated that the relationship with his mother had been good and that he wished he could speak to her again.
Although the evidence indicates the decedent was having personal problems, the testimony demonstrated that the children felt close to their mother and that each child depended on decedent to some extent. The evidence showed that decedent was the primary caregiver of the children throughout their lives and that after her separation from their father, she was the only parent due to his lack of involvement.
Thus, the jury was aware that with the loss of decedent, the plaintiffs were effectively left without a parent. In this situation, the jury could reasonably have concluded that Sandra and James would have particularly needed the guidance of decedent and that Michael would have relied on her as he was raising his own child. The wrongful death awards reflect the trauma to these young individuals of losing the affection, care, assistance, advice and companionship of their mother.
After reviewing the entire record, we conclude that these awards approach, but do not exceed, the highest amount reasonably within the broad discretion of the jury in assessing damages. Consequently, we cannot say the jury's awards of wrongful death damages are excessive.
The defendants also contend the jury erred in awarding survival action damages. Defendants argue that the evidence does not support any award for the decedent's pain and suffering. The survival action includes recovery of damages for mental or physical pain and suffering and other damages sustained by the decedent up to the moment of death. Prince v. Mattalino, 583 So.2d 541 (La.App. 3rd Cir. 1991). Damages for pain and suffering are properly awarded if there is a scintilla of evidence of any suffering or pain on the part of the deceased by his actions or otherwise. Prince, supra.
*737 In the present case, Steven Miller testified that after the collision, he approached the automobile and heard decedent mumbling as if trying to speak and that she did not appear to be injured. Considering the circumstances of the accident, the jury could have concluded that prior to impact, decedent would have experienced significant fear and anxiety as she pressed the brakes and skidded to avoid the collision and at some point realized she would not be successful.
Based on the testimony and the photographs depicting the extensive damage caused to the decedent's vehicle, there was evidence from which the jury could find that decedent experienced pain and suffered prior to losing consciousness. Consequently, we cannot say that the jury's award of survival damages was an abuse of discretion. The assignment of error lacks merit.

CONCLUSION
For the foregoing reasons, the trial court's judgment is affirmed. Costs of this appeal are assessed 80% to the defendants, Jessie Lee, Mitchell Transportation Services, Inc., Clarendon National Insurance Company and RLI Insurance Company, and 20% to the plaintiffs, Michael McGrail, James McGrail and Ray Winters, as tutor of Sandra McGrail.
AFFIRMED.

APPLICATION FOR REHEARING
Before WILLIAMS, STEWART, GASKINS, CARAWAY, and PEATROSS, JJ.
Rehearing denied.
CARAWAY, J., would grant rehearing.